CITY OF DALLAS V. CHARLES KAHN.

No. 588.

1. **Evidence—City Engineer—Street Grading.**—Where the proof clearly showed that the city engineer acted under the authority of the city council, his verbal testimony as to fixing a street grade, and that the street was cut down to such a grade, is admissible, and is not secondary evidence.

2. **Limitations—Special Statute—Charge of Court.**—The charter of the city provided, that no suit for damages should lie against the city unless brought within three months next after the cause of action accrued. In a suit for damages from the grading of a street which had been cut down several times, the court's charge limited the recovery to damages from the last grading, which was completed within three months from the filing of the suit. *Held,* that it was not error to refuse to charge as to the special statute of limitation prescribed by the charter.

3. **Street Grade—Evidence of Damage.**—It is improper for a witness, in an action against a city by a lot owner for damages caused by the grading of a street, to testify, that in the absence of certain buildings which surrounded the lot when the grading was done, such grading would have damaged the lot; but the admission of such evidence is not necessarily prejudicial error.

4. **Damages from Street Grading—Benefits and Injuries in Common.**—In assessing the damages to a lot resulting from the grading of a street, injuries and benefits to the particular property should be considered, although every other lot on that street is benefited or injured in the same manner, as such benefits and injuries are different from those which are in common with the community generally.

5. **Same—Value of Homestead Lot for Business Purposes.**—Where property injured by the grading of a street is the residence homestead of the owner, benefits arising from its increased value for business purposes should not be considered in offset of the damage.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*A. P. Wozencraft* and *W. T. Henry,* for appellant.—1. The fixing of a grade of a street being a matter of record, can not be proven by verbal testimony. Williams v. Davis, 56 Texas, 253; Bingham v. Talbot, 64 Texas, 271; Yavapai Co. v. O'Neil, 29 Pac. Rep., 430; Christmore v. Phillips, 34 N. Y., 444; Childry v. Huntington, 11 L. R. A., 313.

2. The court erred in refusing to instruct the jury as to the special statute of limitations prescribed in defendant's city charter, as requested in the first special charge asked by defendant, as set out in the fourth ground of defendant's motion for a new trial. City Charter of Dallas, approved March 13, 1889, sec. 166; Const., art. 11, secs. 5, 7;

City of Dallas v. Electric Co., 83 Texas, 243; Preston v. City of Louisville, 84 Ky., 118.

3. The court erred in permitting W. M. Johnson to testify what the decrease in the market value of plaintiff's property would have been by reason of said improvements if the hotel near said property and the other improvements in the vicinity had not been made; because plaintiff's measure of damages must be based upon the actual existing conditions, and not upon any hypothetical, fictitious, or supposed conditions. Railway v. Schofield, 72 Texas, 496; Dill. Mun. Corp., 4 ed., sec. 625.

4. Appellant was entitled to offset any benefits which accrued to appellee's property by reason of the improvements which were not common to the community generally, and which were special to appellee's property and the property surrounding. Rev. Stats., arts. 4195, 4196; Railway v. Fuller, 63 Texas, 467; McDonald v. Railway, 1 Posey's U. C., 191; Bloomington v. Pollard, 30 Ill. App., 133; Stewart v. Council Bluffs, 50 N. W. Rep., 209; Low v. Omaha, 50 N. W. Rep., 750; Railway v. Worcester, 29 N. E. Rep., 56; Cross v. Plymouth Co., 125 Mass., 557; Donavan v. Springfield, 125 Mass., 371.

5. The measure of damages which appellee was entitled to recover was the difference between the market value of the property alleged to have been damaged immediately before and its market value immediately after the acts complained of; and said market value should be considered with reference to the purposes for which said property was marketable, and it was immaterial in assessing said damages for what purposes appellee desired to use said property, or for what purposes it was appropriated. Railway v. Schofield, 72 Texas, 496; 1 Ct. App. C. C., secs. 445-888; Chambers v. Chester, 140 Pa. St., 510; Dill. Mun. Corp., 4 ed., sec. 624, and authorities cited; Railway v. Worcester, 28 N. E. Rep., 56; Upham v. Worcester, 112 Mass., 97.

*W. M. Edwards* and *R. E. Cowart*, for appellee.—1. The benefits to be allowed in appellant's favor as the result of the work complained of are those that affect the actual use and enjoyment of the property, and those only that are direct and special to appellee or his lot, not those that are received by him or his lot in common with the community. Lewis on Em. Dom., p. 476; Pottowatomie County v. O'Sullivan, 17 Kas., 58; Railway v. Eddens, 60 Texas, 656; Railway v. Fuller, 63 Texas, 467.

2. Appellee had the right to have his damages measured by the extent of the injury to the lot used for any lawful purpose to which he had appropriated it, or to which it was adapted; and appellant had no right, after causing the injury, to have the measure of damages fixed by the effect which its injurious act may have on the lot if used for some other purpose than that to which it had hitherto been applied, or that he desired to apply it. Railway v. Crabtree, 2 W. & W. C. C., sec. 581; Railway v. Wallace, 74 Texas, 582; Railway v. Hogsett, 67

Texas, 687; McCarty v. St. Paul, 22 Minn., 527; Chicago v. Taylor, 125 U. S., 161.

FINLEY, ASSOCIATE JUSTICE.—This suit was instituted in the District Court of Dallas County, Texas, January 18, 1890, by appellee, Charles Kahn (plaintiff), against appellant, the City of Dallas (defendant), to recover damages. Appellee, in his amended original petition, filed January 24, 1891, alleged, that on March 17, 1875, he became the owner of a lot of land in the city of Dallas, between Akard and Kendall streets, on the north side of Jackson street, fronting seventy-five feet on Jackson street, and running back 100 feet, said land being described in said petition, and that he still owned said land, and lived and had a dwelling house of five rooms and a kitchen and the usual outhouses and improvements on said lot, all of the value of $1500. That when said house and improvements were erected on his lot the grade of Jackson street had not been fixed by the city, but the surface of the street was on a level with the front of his lot; that Jackson street is fifty feet wide; that in the year 1882, appellant, through its city council and engineer, fixed and established a grade on Jackson street, and caused the profile thereof to be prepared, and by said grade changed the surface of said street in front of appellee's lot; and that afterward said grade was again fixed, ratified, and adopted in 1888. That this grade remained established until the month of July, 1889, when appellant's city council, without appellee's consent, by resolution, changed and lowered the grade of said street in front of his property to the depth of five feet, and advertised for bids, and afterward let a contract, and cut and lowered the surface of said street to said grade; that before that time appellee had convenient access, ingress, and egress to his property from said street, and used his property with comfort and freedom; that he continuously occupied said property as his homestead from 1885 until the change was made; that said property is residence property, and suitable only for a home, and its general productive value is to be occupied and rented for residence purposes; that he could easily transport from the street to his house the necessary supplies for the use of his family; that the last grade established, to wit, in 1889, and the lowering of the street, which occurred in February, 1890, cut down said street so that immediately in front of his lot it was fifteen or sixteen feet below the natural surface of his lot; and appellee's ingress and egress was cut off and obstructed, and his house and improvements impaired and rendered worthless, to appellee's damage $1500. That to render his lot of any value or use, he will be compelled at great cost to dig down the lot to the present grade and level of the street and that he had been injured to the amount of the cost of so doing, which would be $1500; that he would also have to build a retaining wall to prevent the soil and earth and buildings on the next adjoining lot from caving in and falling on his

lot, which retaining wall will cost $1000—to which extent he has been damaged.

Said petition further alleged, that the work of reducing the surface of Jackson street, as complained of, was not done by appellant in a regular, usual, and proper prosecution of municipal work, but the same was done for the convenience and advantage of a private corporation; that the work was hurriedly determined, and entered upon in a reckless, negligent manner, and was consummated with utter disregard of the rights of appellee, and the grade was cut ten feet lower than was originally ordered and directed by the city council. Appellee alleged, that the value of his lot and property was reduced and diminished in value as aforesaid, and asked damages for $4000 against appellant.

Appellant answered by general and special demurrers, and exceptions and general denial, and also specially: 1. That it is provided by appellant's city charter, granted to it by a special act of the Legislature, approved March 13, 1889, that no action shall ever be sustained against appellant unless the same shall be instituted and a suit therefor brought within three months next after such cause of action shall have accrued; and alleged, that appellee's damages, if any he sustained, and his cause of action therefor accrued more than three months before the institution of said suit. 2. That appellant was acting within the scope of its corporate powers in doing the acts complained of, and had power to do said acts, and is not liable for damages resulting therefrom; and especially denied that appellee's property was damaged by reason of the changing of the grade of Jackson street and excavating the same; and that before the changing of said grade said street was rugged, uneven, unsightly, and unfit for public use as a thoroughfare; and appellant, as it was its duty to do, established said grade and made said excavation. That after the making of said improvement in said street for appellant, said street is a beautiful, even, and useful thoroughfare, thoroughly suited for public travel, and appellee's property is greatly enhanced in value thereby. That said improvements were made at great cost and expense to appellant, and for the benefit of appellee's property, the public, and other property situated in the vicinity thereof. That by reason of said improvement appellee's property has been rendered more desirable for either business or residence purposes, and that its market value was by reason of said improvements increased at least $5000; that all property in the immediate vicinity thereof was also greatly enhanced in value thereby; that handsome buildings were enabled by said improvements to be built in the vicinity of appellee's said property, and thereby said property was rendered more desirable and more valuable.

Said cause came on for trial on January 18, 1893, and the court overruled all of appellant's exceptions to plaintiff's petition except the fifth exception, which was sustained. Appellant duly excepted to said ruling, and thereupon a trial was had before a jury, and said jury re-

turned a verdict in favor of appellee for $500, and judgment was rendered therefor, from which this appeal is taken.

*Opinion.*—The first and second assignments of error raise the same question, and are based upon the action of the court in admitting the testimony of witnesses Johnson and Thatcher, city engineers at different periods, to the effect, that they fixed the different grades of Jackson street under direction of the city council, and that the street was cut down to such grades. The propositions urged by appellant are: 1. That the power to establish and regulate and grade and improve the streets being vested by appellant's charter in the city council, the engineer would not have the power to establish a grade. 2. The fixing of a grade of a street being a matter of record, can not be proved by verbal testimony.

It was clearly shown that these engineers acted under authority and by the direction of the city council; resolutions and other record evidence of these facts were introduced in evidence, and fully established them. The evidence was not secondary, and it was properly admitted.

It is claimed, that the court erred in refusing to instruct the jury as to the special statute of limitation prescribed in the city charter, as requested by special charge. The charter provision referred to is as follows: "No suit for damages of any kind shall ever be sustained against said city, unless such suit is instituted within three months next after the accrual of such cause of action."

The suit was filed January 18, 1890, and was amended January, 1891. The grading of the street, cutting it down, for which damages were sought to be recovered, was alleged to have begun in 1889, and completed February, 1890; and these facts were established without controversy. The charge of the court limited the recovery to damages occasioned by this last work of grading. Under this state of the pleading and evidence, the court did not err in refusing to charge upon limitation under the charter.

Appellee's attorney on the trial of said cause asked appellee's witness, M. W. Johnson, the following question during the redirect examination of said witness: "If there was no Oriental Hotel and city hall or other business houses around near plaintiff's property, as there are, would the cutting down of Jackson street have decreased or increased the value of plaintiff's property?" To which question appellant objected, because appellee's measure of damages must be based on the actual existing conditions, and not upon any hypothetical, fictitious, or supposed conditions, and because said question was incompetent and immaterial. But the court overruled the objection, and the witness answered as follows: "If there was no Oriental Hotel and city hall, or other business houses, around near plaintiff's property, as there are, I think the cut in the street would have decreased plaintiff's property in value. These surroundings make the property valuable."

The admission of this evidence is assigned as error. The objection to the question should have been sustained. The issue was as to the. amount, if any, of damage done to the property as it existed at the time the street was cut down. It was an immaterial and improper inquiry as to how the property would have been affected under a supposed state of conditions. We are of the opinion, however, that the answer of the witness was such that appellant was not injured by it. The answer amounted merely to a statement that the property would have been damaged, the amount not given, if the Oriental Hotel, city hall, and other business houses had not been situated near the property—that the surroundings made the property valuable. These surroundings existed before the cutting down of the street, for which damages are claimed, and were not the result of it. It was established beyond all doubt that the property, as residence property, was damaged by the cutting down of the street. We can not imagine any reasonable theory upon which the jury could have considered this evidence to the injury of appellant. Railway v. Hall, 78 Texas, 175, 176.

Appellant complains of the charge of the court in the following assignment: "The court erred in instructing the jury that they should not consider any evidence of benefits in rendering their verdict, except such benefits as plaintiff's property received, and which were not common to other surrounding property on Jackson street, because the defendant was entitled to offset any benefits which were special to plaintiff's property and the property in the immediate vicinity thereof, and which were not common to the community generally; and the court in said charge confined the special benefits which defendant was entitled to offset against plaintiff's damages to such as were not common to surrounding property on Jackson street."

In support of this assignment, we are referred to articles 4195 and 4196, Revised Statutes. These articles provide as follows:

"Art. 4195. * * * When only a portion of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner as to the remaining portion of such real estate; whether such remaining portion is increased or diminished in value by such condemnation, and the extent of such increase or diminution, and shall assess the damages accordingly.

"Article 4196. *Injuries and benefits which shall not be estimated.* In estimating either the injuries or the benefits, as provided in the preceding article, those injuries or benefits which the owner of such real estate receives or sustains in common with the community generally, and which are not peculiar to him and connected with his ownership, use, and enjoyment of the particular parcel of land, shall be altogether excluded from such estimate."

These statutory provisions, it will be seen, relate exclusively to assessing damages for injuries to property resulting from the construc-

tion of railroads.     Article 478, Revised Statutes, provides for the con-
.demnation of private property for public use by cities, and makes
articles 4195 and 4196 govern such condemnation.     These provisions
lay down the rules for determining the amount of damages where the
property, or part of it, is *taken* by the railroad or city, but furnish no
express rule in the case where the property is damaged, and not ap-
propriated.     Our Constitution prohibits the *taking* or *damaging* of pri-
vate property for public use, without just compensation therefor.
Where private property has been damaged for the public benefit, the
owner is entitled to be reimbursed to the extent that his property has
been damaged.     The statutory method prescribed for ascertaining the
damages, where there is a partial taking, designates, as elements to be
considered, those which the principles of justice and equity would sug-
gest in the absence of such statutory rule.     In determining the amount
of damage to the property which the owner should recover, it would
be necessary to consider any special benefits accruing to the particular
property from the acts complained of as causing the damage.     In the
case of *taking* property, the owner is entitled to recover the value of
the property taken, regardless of benefits accruing to the remaining
property.     Where no property is taken, the issue is one of damages
simply, and must be determined with reference to the particular prop-
erty in question. It is the specific damage to the particular property for
which a recovery may be had; likewise, it is the special benefits to the
particular property which should be considered in mitigation or offset
to the damage done.     The fact that adjoining or neighboring property
is damaged in the same way would not prevent a recovery; neither
would the fact that adjoining or neighboring property received similar
benefits, render it improper to consider such benefits.     The city gov-
ernment had authority to grade down the street, and would not be an-
swerable in damages for any injury done thereby to the public; but it
must respond for special injuries to the property of the individual
member of the public.     In ascertaining the extent of such damages,
any special benefits to the particular property should be considered;
but general benefits to the public should be excluded from considera-
tion.     The fact that other property on the same street was damaged,
or benefited, in the same way, would not exclude such damage or bene-
fit from consideration; it is only when the effect is general, and not
direct and specific upon particular property, that they are not the
proper subjects of judicial consideration.     If the particular property
of appellee sustained special damage by the cutting down of the street
upon which it abutted, he would be entitled to recover, notwithstand-
ing every other lot on the street was afflicted in the same manner.  On
the other hand, if his property was specially benefited by it, the city
is entitled to have such benefits considered in estimating the damages,
even though every other lot on the street received similar special
benefits.     It is the special, as distinguished from the general effects,
which are to be considered.     Railway v. Fuller, 63 Texas, 469.

The portion of the charge complained of is as follows: "If you find from the evidence that plaintiff's property, by reason of the changing and lowering of said grade, received benefits not common to other surrounding property on Jackson street, then you may look to and consider this special benefit in offset to the damages sustained to the amount of such special benefits conferred."

A distinction is clearly drawn in the authorities between such injuries as a property owner may receive which are common to others on the same street, and such as he suffers "in common with the community generally." See Railway v. Goldberg, 68 Texas, 688; Railway v. Hall, 78 Texas, 171.

The charge was technically incorrect. The jury should have been instructed, that if the evidence showed that plaintiff's property was specially benefited, considering the purposes for which it was appropriated and intended, by the cutting down of the street, it would be proper to take into consideration such benefits in offset to the damages, if any, which the evidence might show the property sustained. That they were not authorized to so consider benefits which were common to property in the community where plaintiff's property is situated. There was no evidence that residence property, as such, on Jackson street received any benefits from the cutting down of the street. The only evidence tending to show benefits was directed towards an increased market value for business purposes; and as the property was intended solely for residence purposes, such increased value for business property was not a legitimate offset to the special damages sustained as residence property. The verdict was small, and also indicates that the jury was not misled. Under such a state of the record, we do not think appellant suffered any injury from the error in the charge. The charge was not full upon the point of benefits; but if appellant desired a charge allowing, in offset of damages, such benefits as the property received by grading down the street, which were not common to property in the community, it should have requested such a charge. Not having done so, it can not complain of the omission.

Appellant's eighth and only remaining assignment of error: "The court erred in instructing the jury, that the city would not have the right to have the damages assessed and fixed, upon the theory that plaintiff's land could be used for other purposes than that appropriated or designed to be used by plaintiff; that it was the right of the owner to have his damages measured by the extent of the injury to the land for the purposes for which it was appropriated and used; because the measure of damages that said plaintiff was entitled to recover for said injuries was the difference between the market value of the property immediately before, and the market value of the same immediately after the acts complained of; and said market value should be considered with reference to the purposes for which said land was marketable, and it was immaterial, in assessing said damages, for what purposes it was appropriated or used."

It was alleged and proven, that the property was the residence and homestead of appellee; that he had continuously so used it, and intended and was compelled to use it as his home in the future. An effort was made to show that the property had an increased value as business property. We think the court correctly told the jury that appellee had the right to have his damages measured by the extent of the injury to the property used for the purpose to which he had appropriated it at the time the injury was inflicted upon it. Railway v. Fuller, supra; Railway v. Wallace, 74 Texas, 581.

The evidence shows, that before the last cutting down of the street appellee had convenient ingress and egress to his place; that after this last cut, the street was about fifteen feet below his lot, and that it would cost heavily to lower his lot to the grade, or near the grade of the street, and that the property of appellee was damaged thereby to the extent of the recovery—$500. The street was cut down under the order and direction of the city council.

We find no reversible error committed upon the trial, and the judgment is affirmed.

*Affirmed.*

Delivered November 21, 1894.