RICHEY et al. v. CITY OF SAN ANTONIO et al.   (No. 6297.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 3, 1919. Rehearing Denied Jan. 7, 1920.)

1. APPEAL AND ERROR ⊜⟿500(2)—RULING OF COURT MUST BE SHOWN BY RECORD.

An objection to sustaining special exceptions to certain portions of a petition is not properly preserved, where there does not appear to be any ruling of the court thereon.

2. APPEAL AND ERROR ⊜⟿1040(4)—SUSTAINING EXCEPTIONS TO PORTIONS OF PETITION HARMLESS IN VIEW OF EVIDENCE ADMITTED.

Sustaining of special exceptions to certain portions of a petition, if error, is harmless, where plaintiff was permitted to introduce his evidence fully on the issues upon which his rights were predicated in the petition.

3. EMINENT DOMAIN ⊜⟿293(1) — NECESSARY ELEMENTS OF PETITION FOR DAMAGES RESULTING FROM STREET IMPROVEMENT.

In an action against a city for damages to property resulting from street improvement, it is permissible to set out in the petition the definite injuries, the property taken and destroy-

ed, its intrinsic character, and peculiar value and adaptability for specific purposes, though it is neither necessary nor proper to set out in minute detail all the surrounding circumstances, since the jury under the control and direction of the 'court may consider them in determining the diminution of market value caused by the improvement.

**4. APPEAL AND ERROR ☞670(2)—QUALIFIED BILL OF EXCEPTIONS CANNOT BE VARIED BY EX PARTE AFFIDAVIT OF APPELLANT'S COUNSEL.**

Where the qualified bill of exceptions discloses that a different charge was requested and refused than the one alleged on appeal, appellant's counsel may not contradict the court's qualification and thus vary the facts by their ex parte affidavit.

**5. EMINENT DOMAIN ☞300—EVIDENCE SUFFICIENT TO SUSTAIN FINDING THAT CITY DID NOT TAKE OR APPROPRIATE PLAINTIFFS' LAND.**

In a suit against a city for damages resulting from street improvement and to recover for land alleged appropriated by the city, evidence *held* to justify the jury's finding that no part of plaintiffs' land was taken and appropriated.

**.6. PLEADING ☞115—PLEA OF NOT GUILTY TO WRONGS, TRESPASSES, AND INJURIES TO REAL PROPERTY NOT ADMISSION OF POSSESSION OF DEFENDANT'S PREMISES.**

An assignment that, because the city's answer pleaded "not guilty of the wrongs, trespasses, and injuries complained of," it admits possession of plaintiffs' premises, and the jury should have been instructed to find for defendant the title and possession of the land, must be overruled, where the suit against the city is not for title and possession, nor in .trespass to try title, but merely seeks to recover for land alleged appropriated.

**7. EMINENT DOMAIN ☞297 — EVIDENCE OF CHARACTER OF HOUSES OTHER THAN THOSE ON PLAINTIFFS' PREMISES IN STREET IMPROVEMENT DAMAGE ACTION ADMISSIBLE.**

In an action against the city for damages to real property resulting from street improvement, permitting the city to show the character of other houses in .the neighborhood, and not limiting it to evidence as to plaintiffs' houses, *held* not error, in view of the wide scope allowed to both parties in the matter of evidence.

**8. APPEAL AND ERROR ☞930(3)—IT IS PRESUMED THAT PARTY FAILING TO SUBMIT SPECIAL ISSUES IS SATISFIED WITH CAUSE SUBMITTED BY OPPONENT.**

Where a cause is submitted on special issues and there are no special issues submitted by the opposite party from his viewpoint, it will be presumed such party is satisfied with those submitted.

**9. EMINENT DOMAIN ☞302—SPECIAL BENEFITS TO BE CONSIDERED IN ASCERTAINING EXTENT OF DAMAGES FROM STREET IMPROVEMENT.**

In ascertaining damages to property affected by street improvement, the special benefits to the particular property should be considered, while general benefits to the public should be excluded, and that other property on the same street was damaged or benefited in the same way would not exclude such damages or benefits from consideration.

**10. EMINENT DOMAIN ☞307(3) — EVIDENCE ☞547—ELEMENTS OF AND METHODS OF ASCERTAINING DAMAGES TO REAL PROPERTY FROM STREET IMPROVEMENT.**

The usual way to ascertain market value of real estate is by permitting expert witnesses to state their several methods in ascertaining it, the comparison of value of contiguous property by relation, and the particular uses of the property and those to which it may be put controlled by the court's instructions, and it was proper in a suit for damages resulting from street improvement to instruct the jury to find the reasonable market value of the property prior to the beginning of the improvements and also just after their completion, leaving the jury to an unlimited field of inquiry and the correct standard of values to work a verdict.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by A. E. Richey and others against the City of San Antonio and others. Judgment for defendants, and plaintiffs appeal. Judgment affirmed.

Ryan & Matlock, of San Antonio, for appellants.

R. J. McMillan and U. S. Algee, both of San Antonio, for appellees. ·

COBBS, J. This suit was to recover damages against the city of San Antonio for the appropriation of and for injuries done to appellants' property situated in that part of the city of San. Antonio known as Alamo City, being lots Nos. 1. and 2 in block No. 3, City Block 411.

·The alleged damage was that the city on or about the 14th day of October, 1914, unlawfully entered upon said premises and took possession of a strip of land on the west side of the premises from Fannin street and extending north to San Antonio river the whole length of said premises, a distance of 164 feet, being 3 feet wide, a distance of 103.5 feet north of the north line of Fannin street, and the remainder of said strip extending to San Antonio river, about 60.5 feet in length, 5 feet in width, and caused to be erected and constructed along St. Mary's street and over and across San Antonio river a bridge 40 feet wide and 96 $7/_{12}$ feet in length, its approaches and foundation on the south side of San Antonio river and on the east side of St. Mary's street extending over and on the west line of plaintiffs' premises, the whole length of said premises from the north line of Fannin street north to the San Antonio river a distance of 164 feet as stated. a distance of 3 feet wide for 103.5 feet north from Fannin street to the river, and remain-

der extending back a distance of 60.5 feet and 5 feet wide, which is valued at $1,500 for the alleged wrongful taking.

That before the building of the bridge with its foundation and approaches, the floors in the houses on said lots were about 5 feet higher than the street level with easy ingress and egress over said streets to their property and drained in time of wet weather to San Antonio river, and the construction of such improvements left the property without drainage causing a basin to form around said dwelling houses into which all the water that fell in that vicinity accumulated from 4 to 5 feet in depth causing passage to be difficult, besides being unhealthy, uninhabitable, and unsanitary, depreciating the income therefrom.

That the dust, dirt, filth, and noises caused by the travel over St. Mary's street rendered the property uninhabitable, unhealthy, and unfit for comfortable residence property.

That the building of that bridge caused the destruction of fences, valued at $150; tore down stables and outhouses of the value of $50; two pecan trees cut down valued at $500 each; and two shade trees valued at $50 each.

Plaintiffs further alleged that in order to render said premises inhabitable, rentable, and salable, it became necessary for plaintiffs to move the house situated on said lot No. 1, block 3, and raise both of said houses and premises and fill in said lots to a level with St. Mary street and said bridge, and that the reasonable cost expended by plaintiff in raising said house and filling in said lots to a level with St. Mary street and said bridge in order to make said property inhabitable, rentable, and salable, was the sum of $3,106.58, which sum of money has been expended by plaintiffs since the erection of said bridge in the manner herein set forth by the defendant; that the sum so expended by plaintiffs in the raising of said house and filling in of said lots are as follows:

| | |
|---|---:|
| Moving and raising house located on lot No. 1 ..............................................$ | 852 00 |
| Raising small house on lot No. 2............. | 215 00 |
| (Which consisted of building 5 brick piers, excavating, concrete, 27 extra large cedar posts 14 feet long, 2 feet base, 12 posts for small house, 12 foot chimney foundation.) | |
| Foreman and supervisor...................... | 100 00 |
| Material (lumber, braces, cement, sand, crushed stone, brick, spikes, etc.).......... | 373 58 |
| Plumbing—changing water pipes and sewer.. | 55 60 |
| Changing gas pipes and electric service...... | 15 90 |
| Labor (handling dirt, shoveling under houses, unloading wagons and carpenter work) | 303 55 |
| Dirt filling (9,227 loads at 10c, 12½c, 15c, 20c and 40c) ...................................... | 1,185 95 |
| | $3,106 58 |

Plaintiffs further alleged that said bridge and its approaches were built so close to the house situated on lot No. 1, block 3, City Block 411, on St. Mary street, that to make it uninhabitable they were compelled to move it several feet east from said bridge, and in so doing they were compelled to move it off of the stone foundation under said house which constituted the cellar of said house and one of the most useful and valuable rooms, or additions to said house; and, on account of said removal of said house, said cellar was entirely destroyed, and plaintiffs were unable to restore said cellar under said house without great expense; that plaintiffs are damaged by reason of the loss of said cellar in the sum of $500, which was the reasonable value thereof.

It was further alleged before the construction of the bridge the two houses rented for $50 per month; that appellants were deprived of that rent during the time named in making the repairs to restore it amounting to $350; that immediately before the construction of said bridge and its approaches along St. Mary street on or about October 1, 1914, said property was reasonably worth the sum of $13,500, and thereafter after the commission of the acts on the 1st of July, 1915, was not worth more than $7,000, hence is damaged $6,000.

The appellee answered by exceptions, general and special, and by answer and plea of general denial, "not guilty," plea of two years' limitation, and specially answered that the plaintiffs' property was situated on Fannin street in the city of San Antonio in what was commonly known as Fannin Street Bend, on the San Antonio river; that Fannin Street Bend was dangerously located, owing to the sudden rises of the San Antonio river; that said plaintiffs' property had been, prior to the work done by the city of San Antonio at that point, in constant danger of inundation by reason of floods of the San Antonio river, and had been frequently overflowed and inundated by such floods; that at the time defendant opened St. Mary street by plaintiffs' property and did the other work complained of by plaintiffs, it caused the bridge complained of to be constructed across the San Antonio river, thereby giving a broad thoroughfare from the southern portion of the city; that at said time it raised the banks of the San Antonio river along the Fannin Street Bend and levied same to a great height, thereby rendering the property of plaintiffs and other parties at the Fannin Street Bend immune from overflow of the San Antonio river, and safe from inundation, such as they had suffered in the past; that by the work of raising the banks of the river and opening St. Mary street across the river and to the north, at great expense to the city, it conferred a great benefit upon the property of plaintiffs, and so far from injuring plaintiffs, as claimed by them, their property has been, and was, at the time plaintiffs claimed to have been injured, enhanced in value and they have suffered no damage of any character whatsoever.

The case was submitted to the jury on special issues, and the jury answered in effect: First, the city did not take any of appellants' property or improvements along the side on

St. Mary street; second, just prior to the beginning of the improvements by the city, the reasonable market value thereof was $8,000; and, third, the reasonable market value thereof just after the completion by the city was $20,000.

There was sufficient evidence to support these findings, and there will be no discussion as to it, in detail, except in so far as it may be necessary to pass upon questions of alleged errors in the rulings of the court bearing upon the legal effect.

[1, 2] The first assignment complains that the court erred in sustaining the special exceptions to certain portions of the petition on the ground the same are immaterial, irrelevant, and impertinent to any issue in the suit, and would allow a double recovery.

The objection is not properly preserved. There does not appear to be any ruling of the court on it. On the face of this assignment, the so-called special exception, though very general, an examination of the petition, and the statement of facts discloses that the error, if any could be considered in the state of the record, is harmless, because the evidence practically pleaded was introduced. The complaint of appellee, in its exceptions, is leveled at the fact the petition pleads facts he relies upon for recovery.

The theory upon which the case should have been and was tried was upon the issue as to the difference between the market value of the property before and after its alleged injury.

The appellant seems to have been permitted to introduce his evidence fully on the issues upon which is predicated his right to compensation for the alleged injuries so specially and fully pleaded, and the rulings of the court on the exceptions are harmless.

[3] It is true in such actions it is permissible to set out the definite injuries, the property taken and destroyed, the peculiar value of the property as residence or other character of property, and the uses to which it may be put, by reason of its intrinsic character and its peculiar adaptability to some particular use; it is not necessary or proper to set out in such minute detail and particularity all the surrounding circumstances in the pleading, for those surrounding circumstances, when proper, may be considered by the jury under the control and direction of the court—in the diminution, if any, of the market value caused thereby or in all the uses it may be put.

[4] The appellants complain of the action of the court in not giving special charge No. 1 alleged to have been requested by him, to wit:

"* * * In estimating the reasonable market value of the property immediately after the work done by the city, you must not consider those benefits or injuries to plaintiffs' said property which they may have received or sustained in common with the community generally where said property is situated, which resulted from the opening and raising of St. Mary street, the building of the bridge thereon, the raising of the banks of the San Antonio river along Fannin Street Bend, and on the north end of plaintiffs' property, and which are not peculiar to plaintiffs and connected with their ownership, use, and enjoyment of their said property, and all such benefits or losses shall be altogether excluded from your estimate."

The contention is, without that charge, the jury were unable to render a legal, proper, and intelligent verdict as to the reasonable market value of plaintiffs' property just prior to the beginning of the improvement by the city, and what its reasonable market value was just after the completion of the improvement by the city, and, further, because in estimating damages, injuries or benefits which the owner receives in common with the community generally, not peculiar to him and connected with his ownership, use, and enjoyment of the particular property, shall be excluded from such estimate.

There is a controversy here over the said special charge; that is, that it is not the same charge presented to the court with request to be given, in this, that the charge presented to the court with the request to be given has application only to instructing juries how to ascertain damages under general charge, and not under special issues.

The record shows the following facts in regard to the requested charge:

"This bill of exception is approved with the following explanation and qualification:

"When the special charge referred to was presented to me it read as follows:

"Plaintiffs request the court to give the following special charge in connection with the court's charges Nos. ——:

"'You are charged that in estimating the amount of damages, if any, sustained by plaintiffs, you must not consider these benefits or injuries to plaintiffs' said property which they may have received or sustained in common with the community generally where said property is situated, which resulted from the opening and raising of St. Mary street, the building of the bridge thereon, the raising of the banks of the San Antonio river along Fannin Bend, and on the north end of plaintiffs' property, and which are not peculiar to plaintiffs and connected with their ownership, use, and enjoyment of their said property, and all such benefits or losses shall be altogether excluded from your estimate.

"'Ryan & Matlock.'

"And I refused to give the charge for the reason that the charge had application to a general charge and not to a charge given in questions such as I had been requested to give in this case.

"Now the charge as presented with interlineations and erasures is as follows:

"'Plaintiffs request the court to give the following special charge in connection with the special issues submitted by the court, viz.:

"'You are charged that in estimating the reasonable market value of the property imme-

diately after the work was done by the city, you must not consider those benefits or injuries to plaintiffs' said property which they may have received or sustained in common with the community generally where said property is situated, which resulted from the opening and raising of St. Mary street, the building of the bridge thereon, the raising of the banks of the San Antonio river along Fannin street Bend, and on the north end of plaintiffs' property, and which are not peculiar to plaintiffs and connected with their ownership, use, and enjoyment of their said property, and all such benefits or losses shall be together excluded from your estimate.

" 'Ryan & Matlock, Attorneys for Plaintiffs.'

"If the changes in the charge were made before I signed the refusal thereof, the change was not called to my attention.

"Dated this the 3d day of July, 1919.

"J. T. Sluder, Judge."

The appellants' counsel seek to contradict the court's explanation and qualification on the bill and thus vary the facts by their ex parte affidavit. This cannot be done, and as the bill of exceptions, with its qualification, discloses that a different charge was requested than the one alleged, refusal of which is complained of in the assignment of error, it is obvious that the assignment must be overruled. When the statement discloses that the assignment complains of a ruling not made by the court, it must be held that the assignment is without merit, and is therefore overruled.

[5] The third assignment complains of special issue No. 1 of the court's charge to the jury, did the city take and appropriate any of plaintiffs' property, to which the jury answered, "No." The claim is that the city took possession of a strip of land off the west side of the premises. The proof is the city built its bridge along the line and covered, in so doing, the old fence that marked the boundary which was covered with dirt dumped on appellants' property, but afterwards the appellee rebuilt his fence and put it on top of where the old fence was to mark his property line. Prior to filling in, a concrete wall was built to hold the dirt for the street. The city is asserting no claim to the property. The city filled in dirt on this strip and were in the act of filling the property in when stopped by appellee, but with no view of asserting any claim to it. This is not an ejectment suit or possessory action to recover the possession of particular land at all, besides the city makes no claim to it whatever. The jury was justified from the evidence in finding no part of plaintiffs' land was taken and appropriated. There is a strip of land there about four or five feet between the old fence line and the curb line of the street for sidewalk purposes, but the city is claiming no part of the property claimed by appellee, but in making the improvement no doubt destroyed the fence, but that is an element of damage sued for and is treated of elsewhere.

We can see no error in this, and the assignment is overruled.

[6] The fourth assignment is a complaint that, because appellee in the answer pleaded "not guilty of the wrongs, trespasses, and injuries complained of," it admits possession of the premises, and the court should have instructed the jury to find for the defendant the title and possession of the land. He does not sue for the title and possession of the land and for damages in the nature of suits in trespass to try title, or ask for any writ of possession, but merely seeks to recover the value of land alleged appropriated. Instead of seeking its recovery, he rather desires the city to take it and pay its value. McKee v. West, 55 Tex. Civ. App. 460, 118 S. W. 1135. This assignment is overruled.

The fifth and sixth assignments here make same objection in another form as is made in the third and fourth assignments and are for the same reason overruled.

[7] The seventh assignment complains of the action of the court in permitting appellee to show character of other houses in neighborhood, and eighth in permitting appellee to show that a negro school, which was just across the street from plaintiffs' property which stayed there a number of years, was gone before the bridge was built, because it had no right to show anything about any one's house except the house on plaintiffs' premises. These assignments are without merit and are overruled. An examination of the record convinces us that there can be no just cause of complaint at the ruling of the court set out in any of the foregoing assignments. The court allowed a very wide scope to both parties, and, other than the two last assignments, there is no objection or bill of exception retained disclosed by the record to any of it, and it is so voluminous we will not undertake to set it out in detail.

[8] What we now have to say about the law of the case will explain the reason of our ruling and at the same time demonstrate the rule for estimating the damages in this case which was followed by the learned trial judge. Where a cause is submitted on special issues and there are no special issues submitted by the opposite party from his viewpoint, it will be presumed the party is satisfied with those submitted. Southern Cotton-Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 641.

[9] The measure of damages to property from construction of a railroad in a public street is the difference in its market value just before and just after the construction, but evidence of a general increase in the value in the neighborhood from the presence of the railroad, and here the same rule applies, is not to be considered in estimating damage to property from the construction and operation of the road, but any general increase in value on account of the construction may be added to the value just before. E. T. R. Co.

v. Eddings, 30 Tex. Civ. App. 170, 70 S. W. 98; Pochilla v. Calvert R. Co., 31 Tex. Civ. App. 398, 72 S. W. 255. And the defendant must plead and show special benefits, Id.; City of Dallas v. Cooper, 34 S. W. 321; G., H. & S. A. R. Co., v. Becht, 21 S. W. 971; Ry. v. Fuller, 63 Tex. 469.

The city is not seeking to condemn and take any property, and the jury has found it took none. As we understand the rule to be, as applicable here, when the city exercises its governmental capacity to open, build or extend, raise, grade, lower, or pave its streets, in ascertaining the extent of damages to any person affected thereby, the special benefits, if any, to the particular property, should be considered, but general benefits to the public should be excluded from consideration. The fact that other property on the same street was damaged or benefited in the same way would not exclude such damages or benefits from consideration; it is only when the effect is general, and not direct and specific upon particular property, that they are not the proper subjects of judicial consideration. The municipal government alone, in her governmental capacity, has charge and control of her streets, and she is charged with a public duty to improve them for the general public, and not chargeable with and answerable in damages to any injury done to the general public, but must respond to the individual for special injuries done to his property—not general injuries to the public, nor special benefits to the public, for it is for the latter purpose all city improvements are directed. City of Dallas v. Kahn, 9 Tex. Civ. App. 19, 29 S. W. 98.

[10] An examination of this record shows a very broad latitude given to each party to develop his case by proof. It is somewhat difficult in a case like this to narrow the inquiry to concrete facts. There is no more difficult fact to ascertain than the market value of real estate; the minds of men differ so widely on the subject, for there are so many things to consider in going to establish views. One of the usual ways is to permit expert witnesses to state the several methods used by him in ascertaining it, and the comparison of value of contiguous property by relation, and the particular uses of the property and those to which it may be put. At last this must be controlled by the court in directing the jury. This the court has correctly done here; he submitted in question No. 6 for the jury to ascertain the reasonable market value of the property prior to the beginning of the improvements by the city, and in No. 7 what was the reasonable market value just after the completion, and instructed them they might consider its value for any purpose for which it could be put.

These issues left the jury to an unlimited field of inquiry and a correct standard of values for them to work out their verdict.

We find no reversible errors assigned. We have considered them all carefully, and the judgment of the court is affirmed.