## CITY OF DALLAS v. FIRESTONE TIRE & RUBBER CO.

### No. 11520.

Court of Civil Appeals of Texas. Dallas.

Oct. 28, 1933.

Rehearing Denied Dec. 16, 1933.

longing to appellee, for which it was allowed $3,734.70 damages; the total damages awarded property owners for property taken and incidental expenses amounted to $725,670.41, for the payment of which the city assessed $478,-357.15 against property abutting on the avenue, and in the vicinity, and undertook to pay the sum of $247,313.36 from other available funds, the amount assessed against the property of appellee being $9,158.35.

The statute under which the city proceeded (chapter 17 of title 28, arts. 1201–1220, inclusive, R. S.) clothed it with authority to determine the public necessity for such an improvement, gave authority to procure by purchase or condemnation all lands necessary and pay for same wholly from any fund available for such purpose, or wholly from a fund created by assessments against owners and their property abutting, or in the vicinity, specially benefited by the improvement, or partly from each of said funds, as was done in the instant case; however, the statute provides that no assessment can be made against property, or its owner, in excess of the special benefits thereto, in enhanced value from said improvement. The assessment constitutes prima facie evidence of the validity of the proceedings and, unless set aside, as provided in article 1219, R. S., the prima facie case becomes conclusive.

The statute necessarily assumes that all property abutting the widened and improved portion of the street, or in its vicinity, is potentially or may be specially benefited and enhanced in value from the improvement, but whether this is or is not true, in a particular case, is a justiciable issue, upon which the property owner is entitled to offer evidence and be heard, primarily before the assessment is levied, and secondarily at the trial of the statutory suit provided by article 1219, R. S. These general observations are made in view of the questions raised and the discussion to follow.

Appellant urges a number of propositions, based upon assignments, complaining of the charge, and of the closing argument of counsel for appellee, contending that their several and cumulative effect was to impress the jury with the erroneous idea that, notwithstanding the fact that appellee's property was benefited and enhanced in value from the improvement, the same could not be considered the result of special benefits, in that all other abutting property was similarly benefited and enhanced in value; in other words, that because the benefit to appellee's property was of a kind common to all abutting property on the widened street, it was in nature general or "a whole community benefit," as distinguished from a special benefit, therefore could not be considered in estimating benefits to appellee's lots.

Hugh S. Grady, W. Hughes Knight, A. J. Thuss, and H. P. Kucera, all of Dallas, for appellant.

Crate Dalton and T. M. Dalton, both of Dallas, for appellee.

LOONEY, Justice.

Firestone Tire & Rubber Company, appellee, filed this suit under the provisions of article 1219, R. S., to set aside a special benefit assessment levied by the city of Dallas on a lot of land belonging to appellee, abutting on Ross avenue, and the city appealed from the judgment, setting aside and canceling the assessment.

The city determined, and so declared by resolution, to widen and straighten Ross avenue, from Lamar street to Peak street, a distance of about two miles; the statutory proceedure was pursued, resulting in the condemnation of 214 separate parcels of abutting land, among others, a strip 10x100.64 feet, be-

■ The charge, called in question at this point, is the court's definition of the phrase "special benefits," and reads: "You are instructed that by the term 'special benefits' is meant such benefits as have accrued specially to this property, by reason of the street improvement in question when completed and made available for use, and which are not shared in generally by the whole community." Appellant objected to the definition, because it failed to furnish a correct rule by which to distinguish "special benefits" from "general benefits," in that the phrase "whole community," used in the definition, unexplained, is vague, indefinite, uncertain, misleading, and confusing.

We think the assignment well taken, and, in view of the objections urged, that the court should have embodied in its charge the idea that benefits, if any, to an abutting lot, may be considered special, dependent upon the facts, although other lots abutting on the improved portion of the street are also similarly benefited.

Appellee's counsel argued consistently and forcefully throughout, by illustration and direct statement, that benefits and enhanced value to all lots up and down Ross avenue, being uniform and of the same nature, were within the meaning of the court's charge, of a general or community nature, therefore could not be considered in assessing special benefits. Illustrative of the nature and trend of the argument, among other things, counsel said: "Now counsel asked and argued to you, gentlemen, that the question for your determination was whether all of the property up and down the street was benefited; that is just the thing that is not for you to consider at all under the court's charge, as I consider the charge outlined for you by the court. You will not consider those benefits that accrued to all other property. * * * The question is, is there a special benefit, not is there a general benefit, but if the benefit coming by increment and enhancement in the value of the property along Ross Avenue comes by reason of the general increment due to the widening of the street, then that is a general benefit, and is not a special benefit, as defined in the court's charge, and we believe that the question is not, was the property along the way, all the way along benefited, but was the property in question benefited by reason of the opening and widening of the street? There is no testimony in the record, as we see it, that would warrant a finding of special benefits." In harmony with this idea, and showing counsel's conception of special benefits, he said: "All right, let's make some examples, under the Court's charge of what I deem to (be) special benefits. In the first place it is a special benefit to Firestone Tire & Rubber Company to have a building and its concourse on a street in front of its prop-

erty set back so that it makes a uniform street in front of the property. That is a special benefit, the setting back of the Firestone property and the paving in front of this property, but if there was a mudhole there, gentlemen of the jury, if there had been a mudhole there before the improvements and if that whole section in front of the Firestone Tire & Rubber Company property had a chasm there requiring a bridge to be built across it, if that chasm or opening was there it would make their property less valuable and the improvement of that property was specially enhanced, it got an advantage over other property along the way." Thus, construing the court's charge to be in harmony with this view, counsel announced the rule that benefits and enhancement to appellee's lot from the street widening, being of a nature similar to benefits to all other lots abutting on the improvement, could not be considered, other than as general in nature.

■ We think counsel announced an erroneous rule that was calculated to, and doubtless did, cause the jury to ignore benefits to appellee's property received in common with other abutting lots on the improved portion of the street. The controlling statute proceeds on the idea that all property abutting or in the vicinity of such improvements is potentially, or may be, enhanced in value from special benefits resulting from the improvement; this is shown by provisions of the statute, to the effect that the costs of all property acquired to widen or straighten the street, by purchase or condemnation, including expenses, "may be paid wholly from any fund of the city available therefor, or wholly from the fund created by said assessments [upon property abutting or in the vicinity of such improvements specially benefited thereby], or partly from each of said funds" (article 1202, R. S.), and only in the event the "governing body [of the city] or said commission [where a commission acts] shall determine the amounts, if any, to be assessed," is an assessment of the property authorized (article 1212, R. S.), but "no assessment shall be made against any property, or its owner, in excess of the special benefits thereto in the enhanced value thereof from said improvement. * * *" (article 1209, R. S.) The conclusion is inescapable that the only property liable to assessment for special benefits is "property abutting or in the vicinity of such improvements," and whether in a particular instance this class of property received a special benefit, and, if so, the amount it is enhanced in value, are fact questions to be determined, in the first instance, by the governing body of the city or a commission, after a hearing (article 1212, R. S.) and, in the second instance, by a court, where suit is instituted under article 1219, but, in each instance, the issues are identical; that is, was the property

specially benefited and enhanced in value from the improvement, and, if so, in what amount? However, in determining the existence vel non of special benefits, the fact that other abutting property in the same category is more or less similarly benefited from the improvement does not exclude such common benefits from consideration as being special and assessable. This is the same doctrine announced by this court, in City of Dallas v. Kahn, 9 Tex. Civ. App. 19, 29 S. W. 98, 101, where the city was sued for damages resulting from the grading of the street. The court said: "It is the specific damage to the particular property for which a recovery may be had; likewise, it is the special benefits to the particular property which should be considered in mitigation or offset to the damage done. The fact that adjoining or neighboring property is damaged in the same way would not prevent a recovery; neither would the fact that adjoining or neighboring property received similar benefits render it improper to consider such benefits. The city government had authority to grade down the street, and would not be answerable in damages for any injury done thereby to the public, but it must respond for special injuries to the property of the individual member of the public. In ascertaining the extent of such damages, any special benefits to the particular property should be considered, but general benefits to the public should be excluded from consideration. The fact that other property on the same street was damaged or benefited in the same way would not exclude such damage or benefit from consideration; it is only when the effect is general, and not direct and specific, upon particular property, that they are not the proper subjects of judicial consideration. If the particular property of appellee sustained special damage by the cutting down of the street upon which it abutted, he would be entitled to recover, notwithstanding every other lot on the street was affected in the same manner. On the other hand, if his property was specially benefited by it, the city is entitled to have such benefits considered in estimating the damages, even though every other lot on the street received similar special benefits."

The doctrine applied in strictly benefit cases, such as the one under consideration, was announced by the Supreme Court of Illinois in Metropolitan, etc., Ry. Co. v. Stickney, 150 Ill. 362, 37 N. E. 1098, 1099, 26 L. R. A. 773, in the following language: "Property may be specially benefited by an improvement, and at the same time other property upon the same improvement be likewise specially benefited. This may be illustrated by the assessing of special benefits for a local improvement. Presumably, all the property along the line of the improvement will be more or less specially benefited; that is, benefited beyond the general benefit supposed to diffuse itself from the improvement throughout the municipality ordering the improvement made. If property is enhanced in value by reason of the improvement, as distinguished from the general benefits to the whole community at large, it is said to be specially benefited, and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement, to a greater or less degree, may be likewise specially benefited." To the same effect see City of Philadelphia v. Pennsylvania Salt Mfg. Co., 286 Pa. 1, 132 A. 792; Blair v. City of Charleston, 43 W. Va. 62, 26 S. E. 341, 35 L. R. A. 852, 64 Am. St. Rep. 837; Somers v. Metropolitan, etc., Co., 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344.

■■ So, we conclude that the statements of appellee's counsel in closing, iterated and reiterated, to the effect that, under the court's charge, the jury could not consider, as special to appellee's property, benefits such as accrued in like manner to other abutting property, announced an erroneous and misleading proposition of law. It is never proper for counsel to announce the law to a jury, that being the peculiar province of the court, and the impropriety of so doing is magnified and becomes damaging, when the law is erroneously stated, as we believe was done in the instant case. See Pan Handle, etc., v. Harp (Tex. Civ. App.) 199 S. W. 502; G., C. & S. F. Ry. Co. v. Scott, 7 Tex. Civ. App. 619, 26 S. W. 998; Colorado Canal Co. v. McFarland & Southwell, 50 Tex. Civ. App. 92, 109 S. W. 435, 440; Western Indem. Co. v. Corder (Tex. Civ. App.) 249 S. W. 316.

■ On the hearing of appellant's motion for a new trial, jurors were examined as witnesses, testifying, in effect, that, while they believed appellee's lot was benefited from the improvement, yet, as other abutting lots were similarly benefited, they considered such benefits of a general or community nature, therefore could not be considered as special benefits accruing to the property. But this testimony must be rejected, as verdicts cannot be impeached in this manner. The general rule, subject to the exceptions noted below, is that jurors, in civil cases, are not permitted to impeach their verdicts. See Campbell v. Skidmore, 1 Tex. 475; Mason v. Russell's Heirs, 1 Tex. 721; Boetge v. Landa, 22 Tex. 105; Ellis v. Ponton, 32 Tex. 435; Galveston H. & S. A. Ry. Co. v. Roberts (Tex. Civ. App.) 91 S. W. 375. Article 2234 furnishes exceptions, as follows: "Where the ground of the motion [for a new trial] is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be

material." As the case is not within the terms of this statute, the testimony of jurors cannot be considered for any purpose.

■ Appellant contends that, because appellee's property abuts on the improved portion of the street, the presumption should be indulged, as a matter of law, that it was specially benefited and enhanced in value. We cannot accept this view. The effect of the statute is to designate property abutting or in the vicinity of an improved street as eligible for special benefits; but whether or not, in a particular instance, special benefits are in fact received, and, if so, the amount the property is enhanced in value therefrom, are questions of fact, upon which the owner is entitled to be heard.

■ Appellant also complains that special issues Nos. 1 and 2 (considered together) failed to give the jury a proper guide as to the time within which special benefits could be measured, but by inference limited the jury to the time of the completion of the new improvement, and forbade consideration of reasonable probabilities, as to future use of the property. These issues read: "Issue No. 1. Do you find and believe from a preponderance of the evidence that the plaintiff's land * * * has received any special benefits in enhancement in value due to the opening, widening and straightening of Ross Avenue from Lamar Street to Peak Street? Answer 'yes' or 'no.'" "Issue No. 2. From a preponderance of the evidence, what sum of money do you find represents the special benefits in enhancement in value received by such property by reason of the opening, widening and straightening of Ross Avenue from Lamar Street to Peak Street? Answer in dollars and cents, if any." The charge limited the jury, in estimating special benefits, to the time of the completion of the improvement; in other words, they were not permitted to think beyond that event, or to consider probable future uses for which the property was available. The statute furnishes no guide; its language is general, such as "specially benefited thereby," and that "no assessment shall be made * * * in excess of the special benefits thereto in the enhanced value thereof from said improvement," etc. No case has been called to our attention, construing the statute, but similar cases have been adjudicated in other jurisdictions. The Supreme Court of Massachusetts, in Union St. Railway Co. v. City of New Bedford, 253 Mass. 304, 149 N. E. 42, 44, said: "The rules for ascertaining as a fact the amount of benefit conferred by a public improvement are the same in principle as those by which the value of property is determined in other connections. The benefit is found by deciding how much has been added to the fair market value of the property, where such property has a fair market value, and where it has no market value, as in the case of street railways * * * by deciding

how much has been added to the fair value of its property with reference to all the uses to which it is reasonably adapted and for which it is available. In reaching such decision, reasonable probabilities for future use, either by the owner or others, if sufficiently near in time and definite in kind to be of practical importance, may be considered." In re Paving Streets in Floyd Park Addition, Sioux City, 197 Iowa, 915, 196 N. W. 597, 599, the Supreme Court of Iowa used the following language in point: "Indeed, the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement." Also see (more or less in point) Boyer & Lucas v. Railway Co., 97 Tex. 108, 76 S. W. 441; G., C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467; Diadone v. Houston Belt, etc., Co. (Tex. Civ. App.) 26 S.W.(2d) 366.

■ Appellant also complains of special issue No. 1, because the burden of proof was improperly placed upon it to establish the affirmative of the issue under consideration, that is, whether appellee's lot was specially benefited and enhanced in value from the improvement, and, germane to this question, appellant also assigns error on the refusal of the court to submit its requested issue No. 1.

Issue No. 1, given by the court, appears elsewhere; the requested issue, refused by the court, reads: "Do you find and believe from the preponderance of the evidence that the assessment as levied by the City of Dallas against the property of the plaintiff for special benefits by reason of the opening, widening and straightening of Ross Avenue from Lamar Street to Peak Street, is in excess of the special benefits that will accrue to said property? Answer 'yes' or 'no.'"

The charge improperly placed the burden of proof upon appellant, i. e., the court required the jury to find, from a preponderance of evidence, that appellee's lot had received special benefits from the improvement, whereas, the burden being upon appellee to rebut a prima facie case, the court should have required the jury to find, from a preponderance of evidence, that the property did not receive special benefits. The charge requested should have been given on the particular issue involved, as it placed the burden of proof where it belonged.

■ We have heretofore considered phases of the closing argument of counsel for appellee that we deemed prejudicial, and at this point will notice other portions, also deemed prejudicial. Appellant contends that the statement by counsel, to the effect that appellee could have erected its building on the

lot in question so the city of Dallas would have had to pay probably $15,000 or $20,000, before it could widen the street, was confusing, prejudicial, and not authorized by the evidence.

Evidence was introduced (we think improperly) to the effect that, about a year prior to the first step taken by the city to widen Ross avenue, appellee built upon its lot, at an expense of about $35,000, and, anticipating the street improvement, located its structure and fixtures so as to conform to the widening plans of the city. On this phase of the case, counsel said: "The plaintiff has sought and has at all times co-operated with the City, and the evidence shows that it is reasonable to infer that the Firestone Tire & Rubber Company could have built its premises so that the City would have had to pay the Firestone Tire & Rubber Company probably $15,000 or $20,-000. It could have built its property over to its property line, but it saw fit, as the City adduced from the evidence, to inquire into the matter and set back so it would not cause the City any loss by reason of the City having to pay for this improvement. The Firestone Company built back and made it light upon everybody concerned with the street widening, and did its best to co-operate and do the things that would make it possible for all property-owners along the street to have the benefit of the widened street for their use and benefit, as to the City and community at large, and for them to have the benefit that comes to it, is it fair, I ask you gentlemen, to penalize the Firestone Tire & Rubber Company for being in a psychological position, and having the foresight to set back and prepare itself for the widening?" We find no evidence in the record that justified the statement that, in locating its improvements, appellee saved appellant from $15,000 to $20,000. The statement was not argument, but testimony and inadmissible if it had been offered in evidence at the trial, besides the statement was exceedingly prejudicial, in that it was calculated to impress the jury with the thought that whatever special benefits and enhanced value resulted to appellee's lot from the street improvement were offset by the amount appellee saved the city by locating its building, as was done, in anticipation of the widening of the street. Statement of material facts, by counsel in argument, not based upon evidence, constitutes reversible error. See Texas, etc., Ry. v. Harrington, 44 Tex. Civ. App. 386, 98 S. W. 653; Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, 176; Kress & Co. v. Lindley (Tex. Civ. App.) 46 S.W.(2d) 379.

Appellant assigns error on the action of the court, in admitting, over its objection, the notice served upon it in the condemnation proceedings, also the report of the commission assessing damages, showing the amount awarded owners of property condemned, including the amount awarded appellee.

■ Condemnation proceedings are matters within the exclusive jurisdiction of the county court, and entirely distinct and separate from the proceedings here involved. The evidence objected to could have had no effect, other than to becloud the issue under consideration and confuse the jury; hence, we think the court erred in admitting same over appellant's objection.

■ Error is also assigned on the action of the court in admitting, over objection, the testimony of the witness McCann, to the effect that appellee had theretofore paid for the pavement on Ross avenue in front of its property. The record discloses that, about a year subsequent to the widening of Ross avenue, the city, in a separate proceeding, assessed appellee $628.84 as a special benefit to its property from the paving.

The statutes under which streets are widened and benefits assessed (chapter 17, title 28, R. S.) do not include the subject of paving, as the improvement of a street by widening, and the improvement of a street by paving, are authorized by separate provisions of law, and are separate and distinct. The evidence complained of was calculated to create the belief that payment by appellee of the street assessment satisfied all reasonable claims the city may have had, for benefits to the property from the widening, and in that sense the evidence was prejudicial; but to say the least, being in regard to a separate and distinct proceeding, tended to confuse the jury.

Other assignments and propositions urged by appellant, after being duly considered, are overruled.

Before closing, we will notice certain contentions of appellee which, if sound, would require affirmance of the judgment without reference to the alleged errors committed at the trial. Among other matters, appellee alleged that: "In this connection plaintiff would show that said resolution in so far as it provided 'that the cost of said property when taken and appropriated for such purpose shall be paid by the property owners' is not authorized by chapter 17 of Title 28 of the Revised Civil Statutes of 1925, under which defendant City professed to be acting in passing said resolution, and is in clear contravention of Article 1, sections 17 and 19 of the Constitution of Texas and section 1 of the Fourteenth Amendment to the Constitution of the United States." This position is elaborated by appellee in its brief (page 3) as follows: "Appellee contended that, as a matter of law, this effort of appellant to require appellee to contribute to a fund to be used for the sole purpose of paying its award and those of the other 213 owners of the parcels of land taken by appellant, had the effect of denying appellee its guaranty of adequate compensation for its parcel of land under section 17 of the Bill of Rights of the Constitution of Texas, and of

its guaranty of due process of law under section 19 of the Bill of Rights of the Constitution of Texas and section 1 of the Fourteenth Amendment to the Constitution of the United States. * * * Appellee further contended that appellant's plan of requiring appellee and the other 213 owners of the parcels of land taken by appellant for the purpose of widening the street in question, to contribute to the fund to be used for the sole purpose of paying for their said parcels of land, and requiring appellee to pay $9,158.35 into said fund, would result in appellee giving its parcel of land to appellant and contributing $5,423.65 to aid appellant in paying many unreasonably, and in some cases, unconscionably high awards to other owners of parcels of land taken by appellant." Appellee's position is also stated (page 29, brief) as follows : "Appellee does not question that the taking of private property for the purpose of widening a street is a taking for public use, but does insist that since a public use is 'one which concerns the whole community in which it exists, as contra-distinguished from a particular individual or a number of individuals', it was appellant's duty to require the people of the entire City of Dallas, for whose use the 214 parcels of land were being taken, to pay adequate compensation for said parcels of land. This, of course, could only be done by appellant paying for said parcels of land, from some fund raised by taxing the whole people of the City of Dallas. In requiring the owners of said parcels of land to contribute, through pretended assessments for benefits, to pay for their own parcels of land, appellant was undoubtedly depriving said owners of their constitutional guaranty of adequate compensation."

Thus, the contention is made that the action of the city in assessing appellee's property for the purpose of creating a fund to be used in part payment for property condemned to widen the street (as authorized by article 1202, R. S.) violated the Constitution, and, being wholly void, the court should have granted its motion for an instructed verdict.

Legislative and municipal action, of the nature here involved, has been pursued so long and uniformly sustained by the courts that certain general rules pertaining to the subject have resulted. 25 R. C. L. 129, § 45, states the general doctrine, as follows: "The legislature may determine the amount of money to be raised for a local improvement, or it may commit the question to properly constituted local authorities. When the legislature determines the amount to be raised its action is necessarily conclusive and beyond review. Under the rule of benefits a taxing district, as a whole, may be assessed only to the extent of the sum of the special benefits actually received by the several parcels of contributing property. The improvement, so far as its costs exceed the special benefits resulting to the several parcels of property in the taxing district, is a benefit to the municipality at large. But it is competent for the legislature by statute to authorize the assessment of the entire cost of a street improvement upon property fronting thereon, provided such assessment does not exceed the benefits conferred upon such property by the improvement. * * * When objection is made in time there is no doubt but that the courts will restrain a city from exceeding the statutory limit, but if a property owner with full opportunity fails to take advantage of the method pointed out by statute to keep the municipality within bounds, there are a number of decisions to the effect that the correctness of the assessment cannot thereafter be questioned. * * * Property owners are not chargeable with the price of municipal improvements, but only with an equivalent for the special benefits they derive therefrom ; and such equivalent cannot exceed the reasonable value of the improvement, and hence the municipality, and not the assessable property owners, must bear the excess of price beyond fair cost. * * *" Also, see, 5 C. J. 819 § 3.

The theory of the law is that the imposition of an assessment for a public improvement is justified in the fact that the owner receives a quid pro quo in special benefits from the improvement, and, under our statute, his protection against imposition or arbitrary action is the right of a plenary action, to set aside or correct the assessment, or any proceedings with reference thereto, on the trial of which he may show that his property received no special benefits from the improvement, or, if benefited to a degree, that its enhancement in value was less than the assessment. This provision of the statute, in our opinion, is a complete answer to the constitutional objections raised by appellee.

Appellee also contends that the assessment levied against its property to raise a fund to pay for other property condemned violated the due process clause of State and National Constitutions, in that appellee was not notified of, or permitted to participate in, the respective hearings (213 in number) in which damages were awarded other owners for property taken, thus depriving appellee of an opportunity to contest the price paid or the damages awarded for such other property.

This identical contention was argued in the case of Mrs. Dela Wright et vir v. City of Dallas, 64 S.W.(2d) 799, recently decided by this court. We denied the contention, on the ground that the commissioners were not required to notify any one, except those interested in the title to the property then under consideration. See article 3264, R. S.; Carter v. Marshall Electric Co. (Tex. Civ. App.) 238 S. W. 1015; City of Houston v. Wynne (Tex. Civ. App.) 279 S. W. 916. The Supreme Court of Missouri, disposing of a similar con-

tention, in State v. Seehorn, 246 Mo. 541, 151 S. W. 716, 724, 728, held that: "While it would be entirely proper as a matter of grace to permit the owner of property in the proposed benefit district to aid the city in preventing an unduly high valuation of the property [of others] condemned, yet such owner would have no standing in court as a necessary party. St. Louis v. Ranken, 96 Mo. 497, 9 S. W. 910; St. Louis v. Brinckwirth, 204 Mo. 280, 102 S. W. 1091; St. Louis v. Calhoun, 222 Mo. 44, 120 S. W. 1152; Pleadwell et al. v. Glass Co., 151 Mo. App. 51, 131 S. W. 941; Kansas City v. Smart, 128 Mo. 272, 30 S. W. 773; 1 Page & Jones on Taxation by Assessment, 213; Goodrich v. Detroit, 184 U. S. 432, 22 S. Ct. 397, 46 L. Ed. 627." We therefore overrule these contentions of appellee.

For the errors hereinbefore pointed out, the judgment of the trial court is reversed, and the cause remanded for further proceedings.

Reversed and remanded.