UNION STREET RAILWAY COMPANY *vs.* MAYOR OF NEW
BEDFORD & others.

SAME *vs.* SAME.

Suffolk.   January 27, 1925. — September 18, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Tax,* Betterment. *Street Railway. Municipal Corporations,* Assessment
of tax for betterment resulting from widening of street. *New Bedford.
Way,* Public: alteration. *Words,* "Alteration," "Proportionate."

An assessment made upon a street railway company under G. L. c. 161,
§§ 79, 80, can be supported only by, and cannot exceed, special and
peculiar benefit accruing to the street railway company as a direct result
of an alteration or change in grade of a street; the requirement of
G. L. c. 161, § 79, that the assessment on the street railway company
shall in no case "exceed one quarter of the total cost of such alteration
or change in grade," does not authorize an assessment beyond such
benefit, but is a further limitation on the amount of the betterment
which may be assessed.
An assessment under the statutory provisions above described is not an
excise tax nor a property tax, but must be treated as a strict betterment.

An original order stating that a betterment is to be assessed upon a street railway company under the statutes above described must contain, together with an estimate of the betterments that will be assessed upon each parcel of land within the designated area, an estimate of betterment with respect to the street railway company; and an order for street improvements, upon which an assessment afterwards is made upon a street railway company under such statute, which contained an "Estimate of Betterments" as shown on a plan and also as embodied in the order, with the names of owners of several parcels of land, and did not contain the name of the street railway company under that head, but separately thereafter assessed upon the company "an amount not exceeding one quarter of the total cost" of the improvement, specifically stating that the assessment was under G. L. c. 161, § 79, is invalid because by its own terms the order made a clear demarcation between an estimate of the betterments assessed to the land owners and the assessment to be laid on the street railway company.

An assessment of a betterment upon a street railway company under G. L. c. 161, § 79, cannot be made without adjudication or determination of the benefit or advantage resulting to the company from the alteration or change of grade described in the statute.

The word "proportionate" as it appears in G. L. c. 161, § 79, means "proportionate to the special benefit received."

Failure for thirty days after the adoption of an order for alteration or change of grade described in G. L. c. 161, § 79, to record the plan required by G. L. c. 80, § 2, makes invalid a betterment afterwards assessed upon a street railway company under said § 79.

Under the charter of the city of New Bedford as it existed in 1922, votes of the board of aldermen and of the common council of the city in adopting an order of the character described in G. L. c. 161, § 79, were valid, although each board acted in separate session.

The word "alteration" as used in G. L. c. 161, §§ 78, 79, includes a widening of a highway in which the tracks of the street railway company have been located for a period of five years.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on December 26, 1923, for a writ of certiorari to bring to the court the records of the mayor, board of aldermen and common council of the city of New Bedford with respect to the widening of Union Street between Eighth Street and County Street in that city, the assessment of betterments therefor, and the assessment of a tax upon the petitioner purporting to be imposed under G. L. c. 161, §§ 79, 80, "to the end that the same may be dealt with as law and justice may require." Also, a

PETITION, filed in the same court on January 23, 1924, seeking a writ of certiorari to bring to the court all records

of the same respondents with respect to proceedings as to a widening of Union Street between Seventh Street and Eighth Street "to the end that the same may be dealt with as law and justice may require."

The facts were agreed upon and are described in the opinion. The two cases were reserved by *Carroll,* J., upon the respective petitions and the agreed statement of facts for determination by the full court.

*B. W. Warren,* (*H. Stockton, Jr.,* with him,) for the petitioner.

*D. J. Lyne,* (*J. T. Kenney* with him,) for the respondents.

RUGG, C.J.   These are petitions for writs of certiorari. The petitioner is a corporation organized under the laws of this Commonwealth owning and operating a street railway in New Bedford and vicinity.   The object of the petitions is to set aside two assessments laid upon the petitioner in respect to the widening of two sections of Union Street in New Bedford.   The cases come before us by reservation on the petitions and agreed facts.

The facts so far as relevant to the grounds upon which this decision rests are that in 1922 the board of aldermen of the city of New Bedford adopted separate orders for the widening of two distinct parts of Union Street under the provisions of law authorizing the assessment of betterments.   Each order contained a description of the lands abutting on such widened parts of Union Street expected to receive special advantage from such widening, no part of which was owned by the petitioner, and stated further that "the Union Street Railway Company may be assessed an amount not exceeding one quarter of the total cost of the alteration and widening, under the provisions of General Laws, Chapter 161, Section 79, said one-quarter being" $5,874.75 on one part and $7,924.25 on the other part.   Each of these orders was concurred in by the common council acting alone and was approved by the mayor.   Union Street was accordingly widened.   Thereafter orders were adopted purporting to make the assessments on the petitioner here assailed.   One order recited that "the improvement has been completed and the cost ascertained to be $23,515.18, divided as follows:

damages awarded $20,299; cost of street work, $3,169.27; cost of necessary work of Union Street Railway Company $46.91." Benefit or advantage to abutting land was determined and assessed to certain owners in the aggregate sum of $11,746.63. The order then contained this paragraph: "And be it further ordered, that the Union Street Railway Company shall pay as a proportionate share of the expense the sum of $5,874.75, under the provisions of General Laws, Chapter 161, Sections 79 and 80, said sum being less than one quarter of the total cost of the alteration by widening, which said sum of $5,874.75 is now laid and assessed upon and against the Union Street Railway Company." The collector of taxes was ordered to collect the several sums assessed in accordance with G. L. c. 80, and St. 1923, c. 377. The other order of assessment was similar, with variations as to costs and amounts assessed. No determination or adjudication of any benefit to the petitioner on account of either of these widenings was made. The petitioner has a single track about one hundred ninety feet in length in one of these widened parts of Union Street and two hundred fifty feet in length in the other part, which had been there located more than five years prior to the adoption of either order for widening. The value of the track and all overhead and underground structures was not in excess of $3,117.50 in the shorter part of the widened street and not in excess of $3,780.65 in the other widened part. There is, and during the five years prior to said widenings was, no congestion of traffic in the widened portions of Union Street caused or increased by street car traffic. The use of such portions of the street by the general public is much greater than that by the part of the public riding in the cars of the petitioner. The widenings were not made necessary or desirable for the purpose of granting any location to the petitioner, and no additional locations have been asked for or granted.

The assessments here attacked purport to be laid under G. L. c. 161, §§ 79, 80, which are in these words: "Section 79. If a public way where the tracks of a company have been located for a period of five years is altered, or if the

grade thereof is changed under chapter eighty or eighty-two, the company shall pay such proportionate share of the expense thereof, including therein the necessary cost of changing its railway to conform to such alteration or change of grade, as may be assessed upon it, provided that, if betterments are assessed, no such assessment on the company shall exceed the aggregate amount of all the betterments assessed upon real estate, and that in no case shall such assessment exceed one quarter of the total cost of such alteration or change of grade. Section 80. The provisions of chapter eighty relative to the assessment of betterments on real estate, so far as applicable, shall apply to assessments made under the two preceding sections."

These assessments are under the governing statute designed and intended to be betterment assessments in the strict sense in which that term as descriptive of a method of taxation has come to be used in the statutes and decisions of this Commonwealth. That sense is that betterment as the basis of any exaction for the support of government means a direct and peculiar benefit to particular property separate and distinct from the general benefit shared by the entire community arising from a designated public improvement. It is a benefit reflected either in increase in fair market value or in enlarged facility in the capacity for valuable use of the particular property upon which the betterment is laid. That these assessments are designed and intended to be betterment assessments in that sense is clear from the history of the relevant sections of the statute as well as from their words. The provisions embodied in G. L. c. 161, §§ 78, 79, and 80, first appeared in St. 1898, c. 578, §§ 19, 20, 21. The enactment of the last cited chapter was preceded by an investigation and report by a special committee appointed by the Governor pursuant to St. 1897, c. 509. The report of that committee, House Document No. 475 of 1898, discloses thorough study of the entire subject of the relations between cities and towns and street railways. It is demonstrated on pages 25, 26, 51, 52 of the report that the sections as to assessments of betterments were drafted with the fixed determination that such assessments should

be founded on distinct and direct resulting benefits to the street railway, and on such benefits alone. That report was submitted to the General Court, was referred to an appropriate committee, and the sections proposed in the bill drafted by the committee were enacted into law without material change so far as concerns this point.

The words of the statute apart from their history unequivocally express the idea, as matter of construction, that an assessment upon a street railway can be supported only by and cannot exceed special and peculiar benefit accruing to the street railway company as a direct result of the street alteration or change in grade.

The express mandate in G. L. c. 161, § 80, is that the assessment upon street railway companies shall conform so far as applicable to the provisions of law relative to betterment assessments upon real estate. This is more than a mere matter of procedure. It makes all requirements of substantive law contained in G. L. c. 80 applicable to the assessment of betterments upon street railways. Those provisions authorize the assessment of betterments only when "founded upon special and peculiar benefits to the property from the expenditures on account of which the tax is laid, and then only to an amount not exceeding such special and peculiar benefits." *Sears* v. *Street Commissioners,* 173 Mass. 350, 352. *Sayles* v. *Board of Public Works of Pittsfield,* 222 Mass. 93, 95. *Kansas City Southern Railway* v. *Road Improvement District No. 6,* 256 U. S. 658, 660, 661.

The rules for ascertaining as a fact the amount of benefit conferred by a public improvement are the same in principle as those by which the value of property is determined in other connections. The benefit is found by deciding how much has been added to the fair market value of the property, where such property has a fair market value, and where it has no market value, as in the case of street railways whose franchise and properties cannot be sold except by legislative consent, by deciding how much has been added to the fair value of its property with reference to all the uses to which it is reasonably adapted and for which it is available. In reaching such decision, reasonable probabilities for future

use, either by the owner or others, if sufficiently near in time and definite in kind to be of practical importance, may be considered. *Driscoll* v. *Northbridge*, 210 Mass. 151, 156. *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 208.

It is provided in G. L. c. 161, § 25 (St. 1898, c. 578, § 22), that a street railway company may increase its capital stock by the amounts paid in way of betterments under these sections. This is strong indication of purpose that no such assessment shall exceed the actual increase in value of property and rights of such company arising from the alteration or change of grade of the street. For many years it has been the established policy of this Commonwealth that stocks and bonds of street railway companies shall be issued only for actual expenditures made for property and property rights to be put to valuable use in the public service of furnishing transportation as common carriers. To that end strict limitations as to the issuance of stocks and bonds of such corporations and more or less supervision by a disinterested and expert public board has been required by statute. It would be incompatible with this established general legislative policy to grant permission for the issuance of capital stock to represent such payments for betterments if they could be arbitrary in amount or based on any other theory than actual increase in the value of the property for public service. A statutory authorization of that nature would be contrary to the policy of the Commonwealth with reference to the capitalization of public service corporations and the regulation of fares or other charges to be paid by the public closely connected with capitalization. See *Donham* v. *Public Service Commissioners*, 232 Mass. 309. Taxation cannot commonly be made into anything else than a liability. It is difficult to conceive of liability to taxation as an asset. Sums paid by a corporation actually doing business in way of ordinary taxation or other involuntary exactions for the support of government, apart from direct and special benefit, cannot rightly according to prevalent conceptions of corporate management be made a part of capital or treated as anything else than an expense of operation or maintenance. Such payments are

not in addition to assets. Payment of a betterment assessment is not an addition to assets; but it is founded upon and justified only to the extent that it represents an actual increase of assets growing out of the benefit conferred by the construction of a definite public work. Such actual increase of assets, when paid for by a betterment tax, may be made a part of capitalization under the statute.

The requirement of G. L. c. 161, § 79, that the assessment on the street railway company shall in no case "exceed one quarter of the total cost of such alteration or change of grade," is a further limitation on the amount of the betterments which may be assessed, regardless of the actual benefit received. It is not an authorization to the public board to make any assessment it may vote up to that percentage of total cost. It corresponds to the limitation in G. L. c. 80, § 1, that "no assessment shall exceed the amount of such adjudged benefit or advantage."

The conclusion from these considerations is irresistible that the betterment assessment here questioned is not an excise tax. It bears none of the usual indications of such a tax. Manifestly it is not a property tax.

It seems apparent that the respondents throughout proceeded on the theory that the assessment upon the petitioner authorized by the governing statutes was an excise and not a strict betterment. Doubtless it is a result of that misconception touching the nature of permissible assessment that the proceedings of the respondents with respect to the assessments here under inquiry were defective in several particulars.

These assessments must be treated as strict betterments. It is required by G. L. c. 80, § 2, that the original order which states that betterments are to be assessed for the contemplated improvement shall contain amongst other matters "an estimate of the betterments that will be assessed upon each parcel of land within" a designated area. Although this section refers in terms only to land, such an estimate of betterments is required with respect to a street railway by G. L. c. 161, § 80, which makes imperative the observance of all applicable provisions of G. L. c. 80. The orders for the street improvements upon which these betterment assess-

ments rest contained an "Estimate of Betterments" as shown on a plan and also as embodied in the order with the names of the owners of the several parcels of land. The petitioner was not included under any such heading. It was mentioned separately thereafter as likely to be assessed "an amount not exceeding one quarter of the total cost" of the improvement under G. L. c. 161, § 79. Thus the order by its own terms made a clear demarcation between an estimate of betterments and the assessment to be laid on the petitioner. But for this express distinction fixed by the words of the order itself, we should hesitate to say that the order was in this respect lacking an essential requisite. But as it is, that conclusion cannot be escaped.

The orders levying the assessment contain no adjudication of any benefit or advantage to the petitioner. It is expressly required by G. L. c. 80, § 1, that the appropriate public board shall "determine the value of such benefit or advantage." This is a provision applicable to the assessment to be laid on street railways. It was not observed in terms in the order. It further is agreed as a fact that no such adjudication or determination has been made.

The requirement of G. L. c. 161, § 79, is that the street railway "shall pay such proportionate share of the expense" of the public improvement as may be assessed on it. The word "proportionate" in this connection means, "proportional to the special benefit received." *Hall* v. *Street Commissioners*, 177 Mass. 434, 440. See *Bancroft* v. *Boston*, 115 Mass. 377. A determination of the amount of the special benefit received by the street railway is essential to a valid assessment. That this omission was no oversight is plain because there is explicit adjudication of the special "benefit and advantage" accruing to the several lots of land from the public improvement and an assessment of that "benefit and advantage."

It is an imperative mandate of G. L. c. 80, § 2, that a plan be recorded within thirty days after the adoption of the order for the public improvement, containing the matters there stated, and that no betterments shall be assessed unless such plan is recorded. With respect to one of these orders no

such plan was filed. While the primary object of such plan perhaps is to afford information of record as to land likely to be subjected to the lien of a betterment, nevertheless we think that is a requirement of which the petitioner may take advantage. Failure to comply with that mandate makes invalid that assessment against the petitioner.

New Bedford was established as a city by St. 1847, c. 60. It was there provided with respect to the laying out, widening and alteration of public ways that the city council should have the same power which selectmen and inhabitants of towns then had, but that action should first be taken by the mayor and aldermen. §§ 2, 12. By St. 1889, c. 167, which was accepted by the city, this power was transferred to a board of public works. That board was abolished by St. 1902, c. 460, which was accepted by the city and by which the powers and duties of that board were "transferred to the board of aldermen and the common council." The effect of this legislation is not to revive the provisions of the charter but to create a new instrumentality for the exercise of such powers and the performance of such duties. The board of aldermen and the common council are distinguished by the specific mention of each. Each constitutes a separate body ordinarily having separate meetings, except in instances not here pertinent, where joint meetings may be definitely required. There is no indication in St. 1902, c. 460, of a purpose that they meet jointly for the exercise of the power and the performance of the duties thereby imposed. For these reasons each body is to meet and act separately as it commonly does in the discharge of its other functions. Merely because the board which these two bodies now supersede was composed of three members, and these three must have met together, affords no ground for inference that two distinct and established boards must meet together. All the orders here assailed, having been adopted by each board in separate session, in this particular were adopted in accordance with the statute.

A strong argument founded on the history of G. L. c. 161, §§ 78 and 79, has been urged, to the effect that the widening of a street does not authorize an assessment of a street rail-

way and that the word "alteration" in § 79 does not include a widening. There are authorities wherein the distinction between widening and alteration has been drawn. *Bliss v. Deerfield*, 13 Pick. 102, 106. *Bigelow* v. *Worcester*, 169 Mass. 390, 393. On the whole we are of opinion that "alteration" here ought to be given its broader meaning of including widening. *New England Railroad* v. *Board of Railroad Commissioners*, 171 Mass. 135. *Quinn* v. *Mayor & Aldermen of Springfield*, 233 Mass. 595. *Directors of the Boston & Albany Railroad, petitioners*, 242 Mass. 455, 459.

The assessments against the petitioner must be quashed for the reasons already stated. It is unnecessary to discuss the other points raised by the petitioners. In each case writ of certiorari is to issue declaring invalid the assessment against the petitioner.

*So ordered.*