**Ed H. PAGE et al., Appellants,**

v.

**CITY OF LOCKHART, Texas, Appellee.**

**No. 11343.**

Court of Civil Appeals of Texas.

Austin.

Dec. 1, 1965.

Kuykendall & Kuykendall, F. L. Kuykendall, Austin, for appellants.

Blundell & Moore, O. T. Moore, Jr., Lockhart, for appellee.

HUGHES, Justice.

Mr. Ed H. Page, Mr. Robert L. Holder and Miss Nettie Holder have appealed from a judgment denying them any relief in their suit against the City of Lockhart, Texas, whereby they sought to have declared invalid and unenforceable an ordinance of the City levying a paving assessment against their properties which abutted the streets to be paved.

Mr. Page owned a tract of land containing 12.09 acres which abutted South Medina Street for a distance of 1,722.4 lineal feet. The paving assessment levied against Mr. Page by the ordinance was $3,846.64, or about $318.00 per acre.

The Holders jointly owned a tract of land containing 31 acres which abutted Center Street for a distance of 813 lineal feet. The paving assessment levied against the Holders was $1,815.67, or about $59.00 per acre.

These assessments amounted to $2.233 per lineal foot.

Article 1105b, Vernon's Ann.Tex.Civ.St., authorizes certain cities and towns to improve their streets and to apportion the cost thereof between the City and owners of property abutting the streets to be improved, subject to certain limitations not here involved, and to levy assessments against the abutting property and its true owners and to create liens against such property for the cost thereof apportioned to such property, Sec. 9 of such Article providing, in part, that, " * * * no assessment shall be made against any abutting property or owners thereof in excess of the special benefits of such property, and its owners in the enhanced value thereof by means of such improvements as determined at such hearing."

The "hearing" referred to is described in Sec. 9 and is one to be held by the gov-

erning body of the city or town and which the owners of property to be assessed may attend and may contest, among other matters, " * * * the special benefits to the abutting property and owners thereof by means of the improvements for which assessments are to be levied * * *."

Appellants attended the hearing held by the governing body of the City of Lockhart and contested the amount of special benefits which the properties owned by them would be benefited by the street improvements to be made, contending that the amount of such special benefits and the enhanced values of their properties occasioned thereby was less than the amount of the assessments levied against them and their properties. From an adverse decision by the City Commission, this suit was filed as an appeal under Sec. 9, supra.

The case was tried to a jury, but the trial court withdrew the case from the jury and rendered judgment for the City. The Supreme Court has held, since the trial of this case, that an appeal taken under Sec. 9 of Art. 1105b, supra, shall be tried, insofar as the question of special benefits conferred by the improvements is concerned, under the substantial evidence rule. City of Houston v. Blackbird, 394 S.W.2d 159.

While appellants have numerous points of error, the only real question presented is whether the judgment below is reasonably supported by substantial evidence. If so, it is valid. If not, it is arbitrary. This inquiry presents a question of law.

The City is paying more than one-half the cost of the improvements. The portion of the cost which the City determined should be paid by the abutting property owners was apportioned between such owners on a front foot basis. This system is expressly authorized by Sec. 9 of Art. 1105b, except in cases where the governing body of the City or town is of the opinion that its application would result in injustice or inequality. No such opinion was formulated by the City Commission.

Appellants rely, primarily, upon evidence that the lands owned by them are used for farming purposes only and that the paving of these streets would not enhance the value of the lands for farming. This evidence is not controverted and, standing alone, it would bring about invalidation of the assessment ordinance. There is other evidence in the record, however, which, if it is of sufficient probative force to constitute substantial evidence, would require us to affirm the judgment. This evidence relates to the prospective use of the property for residential, commercial and other uses. If these lands may properly be considered to have a value for the purposes mentioned, then there is testimony that the enhanced value of the lands, attributable to the paving, would equal or exceed the amount assessed against the properties.

Mr. J. T. Dickens, Mayor of Lockhart, testified that the Page property would not be enhanced in value approximately $300.00 per acre, the amount of the assessment, considered as farm property but that considered as possible residential property its value would be increased in this amount by reason of the paving. He was asked, "When would that investment, in your opinion, ripen into something that would be profitable to him?" and he answered, "I would say in about eight or ten years. Maybe sooner than that."

We quote some of the Mayor's testimony regarding the Holder property:

"Q Now, Mr. Dickens, how many lots did you contemplate the Holder property could be divided into?

A That wasn't ever platted and never given—we felt it was in that general location and could be used; maybe the school might need it at some future date or some other developer might want to come in and open it up. There was a large acreage; I don't remember the exact acreage. But, anyway, it is larger than Page's. So, they

would have quite a bit of opportunity to develop it.

Q Of course, this development, there is no way to tell or see the development in sight right now, is there?

A When you look back, in the last seven years, six years, and see where there has been 121 homes built in Lockhart, I don't see why you wouldn't think there is a development.

Q In other words, you are saying it is possible that—how many years, would you say, in your opinion, under oath, it would be before there would be a development and there would be demand for subdivision properties that would authorize the holders to divide their property into a subdivision for residential purposes?

A Well, that depends on numerous things, Mr. Kuykendall.

Q For example?

A If we are successful in obtaining some light industry—and every effort is being made toward that —why, you will naturally—and as Austin grows and Bergstrom expands, there are, more or less, people who rather live in a smaller town than live in the city.

Q In other words, what you are saying, it depends on a number of other development situations arising.

A Well, yes, it will.

Q Did I understand you to say that in your opinion, in some eight or ten years from now, there would be a development out in that area for subdivision purposes?

A It could possibly be sooner than that.

Q That is just a guess, of course, isn't it?

A Why, certainly, it is a guess.

Q Mr. Dickens, of course, if you consider the property as farm land, then the enhanced value resulting from these improvements would not be near as much as the amount of the assessment proposed to be levied, would it?

A But it is not farm land.

Q I understand. I assume that it is considered as farm land, then you are not saying, considering the Page property, for example, as farm land, that these proposed improvements would result in an increase in the value of his land by $3800.00, the amount of his assessment?

A Just as farm land only?

Q Yes, sir, that is what I am asking. I want you to consider it just as farm land.

A No, it wouldn't.

Q And it wouldn't as far as the Holder estate considering that property as farm land, it would not enhance the value of their land $1815.00.

A No, it wouldn't. But it isn't farm land."

Mr. M. W. Blake, a witness for appellants, had been in the retail lumber business in Lockhart since 1938. He had also been a developer of real estate subdivisions in the City for residential purposes. He owned a tract of land directly across Center Street from a portion of the Holder property, a part of which was subdivided into residential lots. When asked, on direct examination, why he had not subdivided all of his land he answered:

"A Well, this will probably take ten years to sell out unless we have an explosion in population.

Q You have lived here a long time, is Lockhart growing fast or slow or what?

A Steady slow.

Q It is your testimony it would probably be ten years before you will be able to sell these lots here?

A Based on past experience, it will.

Q What would be your opinion with reference to the balance of it that is not subdivided now?

A As soon as they are sold, it will be.

Q You intend to lay this out then when the balance of this is sold?

A Yes, sir.

Q As a developer and being in the lumber business, knowing something about the growth of Lockhart, how long, in your opinion, would it be before there would be a need or a demand for the balance of this that is not subdivided?

A It could be possibly a shorter time than ten years. I hope it is.

Q Would you give us your best judgment about how long it would be before both of those tracts of land will be?

A I couldn't say that. It took nine years to sell thirty-nine lots in the other one and there will be about a hundred in this one, if it was all developed.

Q You said it would take about ten years. It would be at least ten years in your opinion before this will be subdivided and there will be a need or a demand for it?

A Yes.

Q Mr. Blake, in your opinion, would a reasonably prudent business man under the circumstances existing here in Lockhart, would a reasonably prudent business man go in and make an investment that would be required in this property that is not laid out, do it now for lots to be divided—

A I don't know if I am prudent or not, but I would not do it."

On cross examination, Mr. Blake testified:

"Q In your opinion, Mr. Blake, paving and curbing the Holder property along Center Street enhances the value of the Holder property at least to the extent of $2,233 a lineal foot?

A I do.

*   *   *   *   *   *

Q Mr. Blake, when you answered the question for Mr. Moore as to enhancement of the value, state whether or not you had in mind it would be used for any particular use?

A I would like to have two acres of land fronting on the street where I got sewer and water down in front of it and add eighteen hundred dollars to it and sell nine lots for seven hundred dollars.

Q You didn't answer the question. * * * I asked him, did you consider the land being used for farm purposes or capable of being used for some other purpose?

A I think it would be foolish to use that land for farm purposes.

Q When you gave the answer though, I am asking you did you consider it as farm land?

A No, I was thinking about lots.

Q Has there been any development on the Holder property in the last few years?

A Not that I know of.

Q Taking the Holder property as a whole, thirty-one acres, in your opinion, is there a reasonable probability in the immediate future, it will be developed into residential property?

A No, sir. That two acres fronting on Center Street could be.

Q But taking all the property as a whole.

A No."

Mr. J. D. Andrews, a member of the Lockhart City Commission testified:

"Q Just two or three final questions, Mr. Andrews. If I understand your testimony, you do not consider—in determining the benefits to this property of Ed Page, you do not give effect to the fact that it is agricultural farm land now and it has been for years.

A I did not take that into consideration now, no, sir.

Q And you did figure that his land could be developed into a subdivision?

A I sure did.

Q But you don't know how long it would be before it would be developed into a subdivision whereby—

A I couldn't. That would be impossible for me to answer that because, not owning the land, that would be up to the individual.

\* \* \* \* \* \*

Q You also knew, of course, that the Holder property was being used for farming purposes. You knew that.

A I knew they were doing some farming out there. I don't know how much farming they did. About that, I couldn't tell you.

\* \* \* \* \* \*

Q Getting back to my question: I want to get you to answer these questions. Although it is not a subdivision and you know of no plans to develop it into a subdivision, you considered the possibility that it could be developed into a subdivision some time—

A There is a possibility it could be developed into anything. We don't know but what somebody might want to come and build another Golden Age home. The possibilities are out there.

\* \* \* \* \* \*

Q In any event, you did not—

A Somebody might want to go out there and put up two or three big apartment houses or something out there. It is close to school. There are possibilities out there.

Q But you don't know of any reasonable probability that that will be done, do you?

A No, I sure don't."

Mr. Andrews further testified regarding the investigation made by the Lockhart City Manager, Mr. Richard Bean, in this matter, and we quote the following testimony of Mr. Andrews:

"Q Under your direction, did you have the City Manager of the City of Lockhart, Mr. Bean, prepare an estimate as to the enhancement of the value because of the construction of the curbing and guttering and paving the streets?

A Yes, we did.

Q Did Mr. Bean report back to you?

A Yes, sir.

Q What was his recommendation?

*    *    *    *    *    *

A He came up with the figure of 2.233.

*    *    *    *    *    *

Q Did Mr. Bean make an investigation as to the enhancement of the value of the property to the City Council?

A Yes, he did.

Q In his report to the City Council was it his opinion that the property in question would be enhanced in value at least to the extent of $2.233 per lineal foot?

*    *    *    *    *    *

A Yes, he gave us a figure of $2.233 per lineal foot.

*    *    *    *    *    *

Q Did he submit a written report to the City Council?

A Yes, he did.

Q Did the City Council have that written report in .its possession during the time that these various meetings were held?

A Yes, sir.

Q In that written report, in his opinion, he stated the property was enhanced in value at least to the extent of $2.233 per front foot?

A Yes, he did."

We also quote the following testimony of Mr. Andrews:

"Q Mr. Andrews, you know that Mr. Page's land has always been used for farming purposes, don't you?

A I think that is right.

Q Are you telling this Jury that that thirteen acres of land owned by Ed Page has always been used for farm purposes and that by paving this street that it is going to enhance the value of that property by three hundred dollars an acre; is that what you are telling this Jury?

A I think so, yes, sir.

Q You are telling this Jury then merely by paving eight hundred and thirteen feet down in front of the land belonging to Mr. Holder and his sister, that just the paving itself, curbing and guttering, is going to increase the value of that property which is being used for farm purposes by sixty dollars an acre?

A Yes, sir, we certainly think so.

*    *    *    *    *    *

Q Mr. Andrews, you don't mean to look this Jury in the face and tell them considering this farm land with which it has been used for all these years when there was an all-weather road in front of the Holder property, merely paving and putting in curbing and guttering, you are not going to look this Jury in the face and tell them, considering it as farm land that it would enhance the value of that land sixty dollars an acre, are you?

A Mr. Kuykendall, I am not going to try to tell this Jury anything. I have already said—

Q I want you to answer my question, please, sir.

A I'm answering it now. I'm not going to tell this Jury anything. The Jury will decide for themselves whether they think it is farm land or what it might be. If you want to put this in farm land I will directly tell you now I

don't think it will enhance it as farm land.

\* \* \* \* \* \*

Q At the time of the assessment you did not consider the land as farm land—

A That is right.

Q —in arriving at the enhancement of the value?

A That is right.

Q What did you consider it as?

A I figured it had possibilities for many things, any kind of a development program."

An aerial photograph of the City of Lockhart shows that the Page and Holder properties are beyond the improved sections of the City. There are improvements on blocks which adjoin the Holder property on the north and east. The Holder property is separated from the Page property by a "new" Lockhart public school. The Page property which is further out from the City than the Holder property and to the southwest has no improved property adjoining it except a few houses to the east.

In City of Dallas v. Firestone Tire and Rubber Co., Tex.Civ.App., 66 S.W.2d 729, Dallas, writ ref.,[1] the Court, in a suit to set aside a special benefit assessment levied by the City against property abutting a street which was widened and straightened held that the enhanced value of such abutting property as a result of such street improvements must be determined under the same rules by which the value or property is determined in other connections, the Court adopting this rule from Union St. Ry. Co. v. City of New Bedford, 253 Mass. 304, 149 N.E. 42. The Court defined this rule in these words:

" 'The benefit is found by deciding how much has been added to the fair market value of the property, where such property has a fair market value, and where it has no market value, as in the case of street railways \* \* \* by deciding how much has been added to the fair value of its property with reference to all the uses to which it is reasonably adapted and for which it is available. In reaching such decision, reasonable probabilities for future use, either by the owner or others, if sufficiently near in time and definite in kind to be of practical importance, may be considered.' In re Paving Streets in Floyd Park Addition, Sioux City, 197 Iowa, 915, 196 N.W. 597, 599, the Supreme Court of Iowa used the following language in point: 'Indeed, the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement.' "

One other "connection" in which the value of property is ascertained is in condemnation suits. Here the rule in considering future uses of the property in determining market value is held to "exclude consideration of purely speculative uses to which the property might be adaptable but wholly unavailable but would permit consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time." City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808. The Court also quoted with approval from other authorities this statement of the rule: " 'To warrant admission of testimony as to the value of land for purposes other than that to which it is being put at the time of the

---

1. Involved here was Art. 1209, R.S.1925, Acts 1923, p. 4, which is similar to

Sec. 9, 1105b in respect to the issue before us.

taking, it must first be shown: 1. That the property is adaptable to the other use. 2. That the other use is reasonably probable within the immediate future, or a reasonable time. 3. That the market value of the land has been enhanced thereby.' * * * 'Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.' "

In Cannizzo the Court approved this charge on market value: "You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."

■ Appellee relies, exclusively it seems to us, upon the testimony of Mr. Blake, which we have set out above, to supply substantial evidence reasonably supporting the judgment of the Court. Considering the testimony of Mr. Blake as a whole, as well as the other testimony in the record, we are of the opinion that the record does not contain substantial evidence to reasonably sustain the finding of the City Commission of Lockhart that the Holder and Page properties would be enhanced in value by the street improvements in a sum at least equal to the cost of the improvements assessed against the owners and the implied finding of the trial court to this effect.

Our reason for this holding is that it is undisputed that such lands considered for farming only will not be enhanced in value by such street improvements and that its use for other purposes is shown to be too remote in time and too speculative to warrant its consideration in determining enhancement of values attributable to the street improvements.

Mr. Blake did flatly state that the Holder land would be enhanced in value by the street improvements to the extent of the assessment. His explanation of this opinion on examination by appellants seems to be based on wishful thinking or upon assumptions for which there is no evidentiary support. At least, his statement that he would like to have two acres of the Holder land fronting on the street "where I got sewer and water down in front of it and add eighteen hundred dollars to it and sell nine lots for seven hundred dollars" is meaningless to us, as we do not understand it. It is certainly without factual support.

It is quite clear, however, that Mr. Blake did not retract his testimony that there was no reasonable probability that in the immediate future the Holder property as a whole would develop into residential property; although, he did express an opinion that two acres, or $\frac{2}{31}$, of it "could be" so developed. He made no similar statement regarding the Page property.

We hold that the substantial evidence in this case is to the effect that the property of the appellants will not be needed by the community in which it is located for other than farm purposes before the lapse of at least eight to ten years.

■ We hold, as a matter of law, that this expected utilization of such land for other than farm purposes is remote; that such use is not expected within the immediate future; and, that its expected use for such other purposes is not within the reasonable future.

While the parties make no effort to connect the improvement of these streets with the nearby new highschool which has frontage on Center Street and is reached by Medina Street, their coincidence indicates that the street improvements were for

the benefit of the public generally and not for the special benefit of the abutting property owners.

It is our opinion that the ordinance in suit is arbitrary as to these appellants, and, as to them it is invalid and unenforceable.

The judgment of the trial court is reversed and judgment is here rendered holding the assessments made by the City of Lockhart against these appellants and their properties as indicated by the ordinance described in appellants' suit to be and the same are hereby declared void and unenforceable.

Reversed and rendered.

ARCHER, C. J., not participating.