CITY OF GRAND PRAIRIE, Appellant,

v.

SISTERS OF the HOLY FAMILY OF NAZARETH, A Texas Corporation, Appellee.

No. 05–92–01962–CV.

Court of Appeals of Texas, Dallas.

Oct. 21, 1993.

Rehearing Denied Dec. 28, 1993.

R. Clayton Hutchins, Grand Prairie, Alan Wright, Margaret M. McLeod, Dallas, for appellant.

Charles J. Winns Rates Jr., Dallas, for appellee.

Before KINKEADE, MALONEY and ROSENBERG, JJ.

## OPINION ON REHEARING

ROSENBERG, Justice.

We grant City of Grand Prairie's motion for rehearing. We withdraw our opinion of July 27, 1993 and vacate the judgment of that date. The following is now the Court's opinion.

Sisters of the Holy Family of Nazareth (Sisters) brought suit against the City of Grand Prairie (City) contending that the City's ordinance[1] levying assessments on Sisters's property was void. The trial court invalidated the assessment ordinance and awarded Sisters its attorney's fees for the City's violation of Sisters's federal constitutional rights. In thirteen points of error, the

---

1. References to the City's assessment ordinance refers to the City of Grand Prairie's Ordinances Nos. 4348, 4362, and 4620, which order the paving improvements and assess special taxes against Sisters and its property.

City complains generally that the trial court erred in entering judgment for Sisters because (1) the City's assessment ordinance was supported by substantial evidence of special benefits, and (2) the City's public hearings were held in compliance with all constitutional and statutory requirements.

We conclude that the City's assessment ordinance was not supported by substantial evidence. Consequently, the trial court did not err in rendering the assessment ordinance null and void. The trial court erred, however, in awarding attorney's fees based on a finding of federal constitutional violations by the City. Accordingly, we reverse the trial court's award of attorney's fees and render that Sisters take nothing on its claim for attorney's fees. We affirm the trial court's judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Sisters is a religious organization that owns property abutting Northwest 19th Street in Grand Prairie, Texas. The organization uses this property as a convent, retirement home, retreat center, chapel, and cemetery complex. In 1988, the City voted to levy assessments to cover a portion of the cost of improving Northwest 19th Street. The City hired an appraisal expert to conduct an enhancement study. The purpose of the enhancement study was to determine the value of benefits that would accrue to the twenty-five abutting property owners and the amount of money the City should assess against each owner.

The Grand Prairie City Council (City Council) held a public hearing on the proposed assessments. Sisters attended the hearing and announced that the proposed street improvements would not enhance its property because the property did not have direct access to Northwest 19th Street and the increased traffic flow would be detrimental to the property's current uses. The City Council postponed action on the matter until its staff could research the questions raised about the proposed assessments.

The City considered the matter again at the public hearing the next week. Sisters restated its opposition to the assessment. Following Sisters's objections, the council members convened in a closed-door executive session to consult with the city attorney. Immediately upon the council members' return, the City Council voted to levy the assessments in Ordinance 4362. Sisters made a final objection asserting that the amount of the proposed assessment against its property was unreasonable and arbitrary. Sisters argued that the proposed street improvements would not confer special benefits on its property in an amount equal to the assessment. The council members responded that after consulting with the city attorney, the City Council found the appraisals to be fair and valid. Sisters was assessed $37,270 while many adjacent property owners were not assessed at all.

Sisters brought suit against the City and filed a motion for partial summary judgment. The trial court granted Sisters's motion stating "there was no substantial evidence that the subject property received a special benefit equal to, or in excess of the amount assessed." At the trial on the remaining issues, the City asked the trial court to reconsider its earlier ruling on Sisters's motion for partial summary judgment. Sisters did not object to the City's request, and the trial court agreed to reconsider its earlier ruling.

After reviewing the evidence and hearing the arguments of both parties, the trial court entered judgment in favor of Sisters. In support of its judgment, the trial court made findings of fact that there was no evidence of special benefits accruing to Sisters's property in an amount equal to or in excess of the assessment. The trial court concluded that the City acted arbitrarily in levying the assessment. The trial court further concluded that the assessment constituted an interference with Sisters's title to the property and violated Sisters's constitutional rights. The trial court further concluded that the City's actions constituted violations of the Fifth Amendment, the Fourteenth Amendment, and sections 1981–1988 of Title 42 of the

United States Code. Finding federal constitutional violations, the trial court awarded $63,768 in attorney's fees to Sisters as a party who prevailed in a constitutional claim under section 1983.

## VALIDITY OF THE ASSESSMENT ORDINANCE

In its third point of error, the City contends that the trial court erred in entering judgment for Sisters because the assessment ordinance was supported by substantial evidence of a special benefit.

Article 1105b of the Texas Revised Civil Statutes controls the City's ability to impose paving assessments on its citizens. *See* Tex. Rev.Civ.Stat.Ann. art. 1105b (Vernon Supp. 1993). Section 9 of this article prohibits the City from assessing property owners in an amount in excess of the special benefits conferred on their property by the paving improvements. *See* Tex.Rev.Civ.Stat.Ann. art. 1105b (Vernon Supp.1993); *Haynes v. City of Abilene*, 659 S.W.2d 638, 641 (Tex.1983).

■ There is a strong presumption in favor of the validity of the City's legislative action. The burden of proof is on the party seeking to invalidate it. *Haynes*, 659 S.W.2d at 640. This Court has no authority to invalidate the City's ordinance unless the assessment is arbitrary or the result of fraud. *City of Houston v. Blackbird*, 394 S.W.2d 159, 163 (Tex.1965); *Cook v. City of Addison*, 656 S.W.2d 650, 658 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). This inquiry presents a question of law for the Court. *Blackbird*, 394 S.W.2d at 163.

■ The substantial evidence rule governs our review of whether the City acted arbitrarily or fraudulently. *Haynes*, 659 S.W.2d at 640. We must affirm the action of the City Council if the assessment is supported by substantial evidence of a special benefit. *Id.* at 640–41. The Texas Supreme Court has defined a special benefit as an enhancement more localized in nature than the general improvement received throughout the community, but not necessarily unique to a given piece of property. *Id.* at 641–42. There is no presumption of a special benefit that arises simply by virtue of the improvement of a city street. *Id.* at 642. In some instances, street improvements may actually decrease the value of residential property. *Id.*

■ At trial, Sisters argued that the City's assessment ordinance was invalid because it was not supported by substantial evidence showing that its property would be benefitted in an amount equal to or greater than the amount of the assessment. Sisters introduced into evidence the minutes from the City Council's public hearings. The minutes reveal that no testimony was given in support of the assessment ordinance. In fact, the only testimony regarding the assessments as they relate to Sisters's property negates the validity of the assessment ordinance.

Sisters also introduced into evidence the documents reviewed by the City Council in making its decision to adopt the assessment ordinance. These documents show that each council member received the proposed assessment ordinances and an assessment roll prepared in reliance on the City's enhancement study. The council members did not receive a copy of the enhancement study itself. The City relies exclusively upon the information contained in the enhancement study to supply the substantial evidence supporting the City Council's decision.

The enhancement study showed that the twenty-five abutting properties were individually analyzed using a land-only basis for determining enhancement value. No attempt was made to value the improvements on the land. The study concluded that the special benefits derived by Sisters's property, as well as by nine of the other abutting properties, included a widened and paved street, newly constructed curbs and gutters, divided median strips, underground storm drainage, driveway approaches, and improved ingress, egress, and overall access. Without explanation, the study indicated that the other fifteen abutting properties did not

receive any benefits from the street improvements.

James Wesley Cullar, the City's expert appraiser, testified at trial that his firm evaluated Sisters's property on a land-only basis without taking into consideration any improvements on the property. Using this method of valuation, Cullar explained that if Sisters's property was vacant, its highest and best use would be the eventual subdivision into single-family residential housing. Cullar determined that as residential realty, Sisters's property would receive the benefits of improved drainage, better access, and increased traffic flow. In other words, the benefit to Sisters's land was based on future development. Cullar was unable to state when, if ever, residential development would occur on Sisters's property.

We determine that a close examination of the enhancement study demonstrates that the City used a method of evaluating Sisters's property that was too remote in time and too speculative to warrant consideration in determining the enhancement values attributable to the street improvements. *See City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808, 814 (1954) (asserting that to admit evidence of the value of land based on a use other than its present use, a party must show that the other use is reasonably probable within the immediate future or within a reasonable time); *see also Page v. City of Lockhart,* 397 S.W.2d 113, 119–20 (Tex.Civ.App.—Austin 1965, no writ) (applying reasoning in *Cannizzo* to determine admissibility of evidence of land values in assessment case). Speculation about special benefits that will accrue in the indefinite future does not constitute substantial evidence to support an assessment ordinance. *City of Arlington v. Byrd,* 713 S.W.2d 224, 228 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3213, 96 L.Ed.2d 700 (1987).

After considering the study as a whole, as well as the other evidence in the record, we conclude that the record does not contain substantial evidence to reasonably sustain the City Council's finding that the street improvements would enhance the value of Sisters's property in a sum equal to the amount assessed. Therefore, the trial court did not err in invalidating the City's assessment ordinance. We overrule the City's third point of error.

In its first two points of error, the City contends that the trial court improperly placed the burden of proving the assessment ordinance's validity on the City. The City argues that because the trial court required the City to present evidence supporting the assessment, Sisters was erroneously relieved of its burden of proof.

It is undisputed that Sisters had the burden of proving that the City Council's assessment was arbitrary. *See Haynes,* 659 S.W.2d at 640. The trial court acknowledged Sisters's burden by stating in its conclusions of law: "There is a strong presumption in favor of validity of a municipal ordinance and review of an ordinance by the court is governed by the substantial evidence rule. Substantial evidence need not be much evidence, but substantial evidence means more than a scintilla."

At trial, Sisters introduced into evidence the parties' stipulated facts, the minutes from the public hearings, the documents received by the council members, and the testimony of the City's expert appraiser. Sisters asserted that these documents did not contain substantial evidence of a special benefit. After Sisters established its prima facie case, the City tendered the enhancement study to refute Sisters's contentions. The City did not produce further evidence of the existence of a special benefit. We have already determined that the enhancement study did not constitute substantial evidence supporting the assessment ordinance. We hold that Sisters successfully carried its burden of production and persuasion by demonstrating that the assessment was arbitrary. *See Simpson v. Home Petroleum Corp.,* 770 F.2d 499, 503 (5th Cir.1985). We conclude that the trial court did not place the burden of proof on the City. We overrule the City's first and second points of error.

## THE TEXAS OPEN MEETINGS ACT AND ARTICLE 1105b

■ In its fourth, fifth, and sixth points of error, the City contends that the trial court erred in concluding that the City Council's closed-door executive session violated section 2(e) of article 6252–17 and section 9 of article 1105b of the Texas Revised Civil Statutes. *See* Tex.Rev.Civ.Stat.Ann. arts. 6252–17, 1105b (Vernon Supp.1993).

At oral argument, the City conceded that the issues raised in these points of error are not necessary to the disposition of this appeal because the trial court did not grant affirmative relief for violations of these statutes. Therefore, we need not address the City's fourth, fifth, and sixth points of error. *See* Tex.R.App.P. 90(a).

## TEXAS CONSTITUTION

■ In point of error nine, the City contends that the trial court erred in concluding that the City's paving assessment ordinance constituted a taking without just compensation under the Texas Constitution. Tex. Const. art I, § 17.

Sisters, however, did not seek compensation for injuries suffered under the takings clause of the Texas Constitution nor did the trial court grant affirmative relief based on such a violation. A determination of whether the City's assessment ordinance, rendered null and void by the trial court, constituted a taking without just compensation in violation of the Texas Constitution is not necessary to the disposition of this appeal. Accordingly, we do not address the City's ninth point of error. *See* Tex.R.App.P. 90(a).

## UNITED STATES CONSTITUTION

The City's next four points of error concern the trial court's conclusion that the

City's action in levying an arbitrary special tax assessment against Sisters's property resulted in a taking, thereby violating Sisters's federal rights secured by the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

### 1. Parties' Contentions

The City urges that the requirements of article 1105b of the Texas Revised Civil Statutes, which include public hearings coupled with appellate review, satisfy the commands of the United States Constitution. The City asserts that the trial court represents an integral part of the special tax assessment process, which is designed to insure that an improper tax is not levied. Further, argues the City, article 1105b provides judicial review to protect against a "taking by governmental action" or a "deprivation of property without due process of law." Consequently, the property owner—successful at the trial court level—has not suffered a "taking" or "deprivation of property" that would constitute a constitutional injury compensable in a section 1983 cause of action.[2]

According to Sisters, the trial court's role is to determine if the City provided its citizens with appropriate substantive and procedural due process. If the trial court finds that the City acted arbitrarily, the trial court not only has the authority to invalidate the assessment and resulting lien, but also has the authority to find a constitutional injury under the United States Constitution and award damages and attorney's fees pursuant to sections 1983 and 1988 of the U.S.Code. *See Byrd,* 713 S.W.2d at 228.[3] Sisters further contends that a "taking" occurred the moment the City assessed a tax in an amount greater than special benefits and imposed a tax lien on its property.

### 2. Applicable Law

■ As an abstract principle of law, any individualized assessment imposed on a basis

---

**2.** 42 U.S.C.A. § 1983 (West Supp.1993). Further references to sections shall be to Title 42 of the United States Code, unless otherwise indicated.

**3.** In *Byrd,* appellants, claiming that a city is not a proper defendant in a section 1983 cause of action, did not contest the trial court's conclusion of law that the assessment liens amounted to

an interference with title to property and constituted a taking without just compensation. The court of appeals held that a city is a proper section 1983 defendant and the trial court had the authority to award attorney's fees to appellees. 713 S.W.2d at 229.

other than special benefits conferred or in an amount exceeding the special benefits constitutes a taking of private property without just compensation in violation of the United States Constitution. U.S. CONST. amends. V, XIV; *Norwood v. Baker,* 172 U.S. 269, 279, 19 S.Ct. 187, 190, 43 L.Ed. 443 (1898); *Haynes,* 659 S.W.2d at 641; *Blackbird,* 394 S.W.2d at 162.

However, a specialized assessment, not based on special benefits, does not *automatically* entitle a plaintiff-taxpayer to an award of damages and attorney's fees under a section 1983 cause of action, alleging a violation of the Fifth and Fourteenth Amendments. *See Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194 n. 13, 105 S.Ct. 3108, 3120 n. 13, 87 L.Ed.2d 126 (1985); *Federal Deposit Ins. Corp. v. City of New Iberia,* 921 F.2d 610, 615 (5th Cir.1991). Although a specialized assessment may be greater than the benefits conferred and thereby violate the Fifth and Fourteenth Amendments, the unconstitutional assessment may not constitute a compensable injury under section 1983.

To determine whether Sisters suffered a "taking without just compensation" or "deprivation of property without due process of law," we must determine whether a pre-assessment hearing coupled with judicial review applying the substantial evidence rule satisfies the due process requirements of the Fifth and Fourteenth Amendments. *See* U.S. CONST. amends. V, XIV.

■ A special tax assessment in excess of benefits conferred will not contravene the Fifth and Fourteenth Amendments, thereby creating a compensable injury under section 1983, unless (1) the assessment is collected, and (2) the assessment amounts to such an abuse as to be an outright confiscation of property or taking without just compensation. *See Williamson,* 473 U.S. at 194 n. 13,

105 S.Ct. at 3120 n. 13; *Federal Deposit Ins. Corp.,* 921 F.2d at 615 (citing *French v. Barber Asphalt Paving Co.,* 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879 (1901); *Wight v. Davidson,* 181 U.S. 371, 21 S.Ct. 616, 45 L.Ed. 900 (1901); *City of Detroit v. Parker,* 181 U.S. 399, 21 S.Ct. 624, 45 L.Ed. 917 (1901)). To begin our inquiry, we first consider the due process requirements of the Fifth and Fourteenth Amendments.

### a. Fourteenth Amendment

■ A Fourteenth Amendment "takings" challenge to a special tax assessment occurs if the tax collected is so palpably punitive or arbitrary as to confer no benefit on the landowner or "force[s] a landowner to make an improvement that, while valuable to others, is useless to him." *See Federal Deposit Ins. Corp.,* 921 F.2d at 615 (citing *Furey v. City of Sacramento,* 780 F.2d 1448, 1454 (9th Cir. 1986)).

Because collection of a tax constitutes a deprivation of property, the government must also provide procedural safeguards against unlawful exactions to satisfy the commands of the Due Process Clause.[4] To satisfy due process requirements,

> the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a clear and certain remedy for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one.

*McKesson v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 39, 110 S.Ct. 2238, 2250, 110 L.Ed.2d 17 (1990) (footnotes and citations omitted). "The fundamental requirement of due process is the opportunity to be heard '*at a meaningful time and in a meaningful manner.*'" *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902 (emphasis added and citations omitted).

---

**4.** Due process generally requires three factors to be considered: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and the administrative burdens that the additional or substantive procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 903–904, 47 L.Ed.2d 18 (1976).

█ If a municipality offers a meaningful opportunity for taxpayers to withhold contested tax assessments and challenge their validity, no deprivation of property without due process of law has occurred. *See McKesson,* 496 U.S. at 39–40, 110 S.Ct. at 2251. If the plaintiff-taxpayer prevails in its prepayment challenge to the unconstitutional tax, no deprivation of property has occurred, and the Fourteenth Amendment has not been contravened. *Id.*

█ The availability of a predeprivation review constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause. *See McKesson,* 496 U.S. at 40 n. 21, 110 S.Ct. at 2251 n. 21 (1990). Federal due process principles may also be satisfied by a postdeprivation procedure that represents a clear and certain remedy for any erroneous, unlawful, or unconstitutional collection of tax moneys. *Id.; Atchison v. O'Connor,* 223 U.S. 280, 285, 32 S.Ct. 216, 217, 56 L.Ed. 436 (1912).

### b. Fifth Amendment

█ The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 297 n. 40, 101 S.Ct. 2352, 2371 n. 40, 69 L.Ed.2d 1 (1981). A governmental entity may take property so long as it provides an adequate process for obtaining compensation. *Id.* If a property owner utilizes this procedure and is denied just compensation, the property owner may assert a violation of the Fifth Amendment. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1013, 1018 n. 21, 104 S.Ct. 2862, 2878 n. 21, 81 L.Ed.2d 815 (1984). If resort to that process yields just compensation, then the property owner has no claim against the government for a taking. *Id.*

█ A governmental entity's action is not complete in the sense of causing a constitutional injury until (1) a taking occurs, and (2) the governmental entity does not provide an adequate postdeprivation remedy for the property loss. *Hudson v. Palmer,* 468 U.S. 517, 532 n. 12, 104 S.Ct. 3194, 3203 n. 12, 82 L.Ed.2d 393 (1984). Although exhaustion of judicial or administrative review procedures is not required,[5] the nature of the constitutional right to just compensation requires that a property owner utilize the procedures for obtaining compensation or prove that such procedures are wholly inadequate to prevail on a section 1983 claim based on a takings clause violation. *Williamson,* 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13.

### 3. Application of Law to Facts

In the present case, the trial court concluded that "an assessment against property and its owner for paving improvements in an amount greater than [the] benefit conferred violates the Fifth and Fourteenth Amendments of the United States Constitution and amounts to a taking of private property for public use without just compensation." The trial court further concluded that the assessment constituted a lien and cloud on the title of Sisters's property. The trial court reasoned that Sisters filed the present action to remove the cloud on its title; therefore, Sisters, as a prevailing party in a section 1983 action, was entitled to receive reasonable attorney's fees as provided by section 1988.

█ The trial court correctly concluded that the City's tax assessment ordinance was unconstitutional as a matter of law. The trial court erred, however, in reasoning that any unconstitutional tax assessment constitutes, as a matter of law, a taking without just compensation in violation of the Fifth and Fourteenth Amendments. A localized assessment, not based on substantial benefits, is per se unconstitutional when levied because a governmental entity has no authority to assess a special tax on any basis other than special benefits. *See Norwood,* 172 U.S. at 279, 19 S.Ct. at 190; *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). An unconstitutional special assessment, however, does not *auto-*

---

**5.** *See Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

*matically* entitle a section 1983 plaintiff to damages and attorney's fees for violations of the Fifth and Fourteenth Amendments. *See Williamson,* 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13; *Federal Deposit Ins. Corp.,* 921 F.2d at 615.

▇▇▇▇ Sisters, after proving the unconstitutionality of the assessment ordinance, must establish that the process provided by article 1105b does not meet the due process requirements of the Fifth and Fourteenth Amendments to prevail in its 1983 claim.[6] We, therefore, examine the constitutional sufficiency of the due process afforded by article 1105b.

The Texas Legislature, pursuant to article 1105b of the Texas Revised Civil Statutes, designed a system to insure that only constitutional special taxes are assessed and collected. Article 1105b provides several procedural safeguards. Section 9 of article 1105b specifically incorporates the constitutional mandate that special tax assessments be limited to the amount of benefit conferred on the property assessed. *See* TEX.REV.CIV. STAT.ANN. art. 1105b (Vernon Supp.1993). Section 9 requires that notice and opportunity for hearing be provided before any assessment is levied against the property and its owner. *Id.*

The legislature further required municipalities to defend their special tax assessments against claims of arbitrary or fraudulent actions in state court. Section 9 grants the property owner the right to withhold payment and contest the assessment in a state district court. *Id.* The property owner is not required to first pay the special assessment, then seek relief in state court for the payment of an unlawful tax. On the con-

trary, the statute authorizes a prepayment challenge to the arbitrary or fraudulent assessment. *Id.*

Here, Sisters have not paid, and the City has not collected, any tax revenue levied against Sisters. Further, the City's tax lien, during the pendency of the plaintiff-taxpayer's appeal, is unenforceable. A section 1983 claim, therefore, is not necessary to suspend the collection of an unconstitutional special assessment.

The automatic right to judicial review prior to payment represents a clear and certain remedy for any arbitrary assessment not based on special benefits. *See McKesson,* 496 U.S. at 40, 110 S.Ct. at 2251. Predeprivation review constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the requirements of both the Fifth and Fourteenth Amendments. U.S. CONST. amends. V, XIV; *see McKesson,* 496 U.S. at 40; 110 S.Ct. at 2251; *Williamson,* 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13.

▇▇▇▇ Because of the safeguards and due process created by article 1105b, arbitrary actions by a city do not automatically translate into a federal constitutional injury compensable under sections 1983 and 1988. In determining what process is "due" under the Fifth and Fourteenth Amendments, the trial court must consider the process the City Council provided Sisters as well as the judicial review provided under article 1105b. A plaintiff must show the inadequacy of state remedies to redress its alleged loss; otherwise, the plaintiff's evidence is insufficient to show a lack of due process and a violation of section 1983. *See Myers v. Adams,* 728 S.W.2d 771, 772 (Tex.1987) (per curiam).

---

6. A cognizable claim under 42 U.S.C. § 1983 arises where (1) the conduct complained of was committed by a person acting under color of state law, and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West Supp.1993). Sisters alleged the requisite elements for a section 1983 claim. No constitutional or state law doctrine precludes a property owner from filing, concur-

rently with its article 1105b appeals hearing, a suit to recover damages and attorney's fees under 42 U.S.C. §§ 1983 and 1988. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 436, 102 S.Ct. 2515, 2423, 73 L.Ed.2d 116 (1982); *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); *Thomas v. Allen,* 837 S.W.2d 631, 633 (Tex.1992) (per curiam).

■ This is not to say that a plaintiff-taxpayer in an article 1105b appeals hearing cannot meet its burden to show a violation of its federal constitutional rights. Rather, the plaintiff-taxpayer, in a special tax assessment case, must establish that the pre-assessment hearings coupled with judicial review applying the substantial evidence rule is not adequate to preserve its right to just compensation and due process of law; therefore, a 1983 cause of action is necessary. *See McKesson,* 496 U.S. at 40 n. 21, 110 S.Ct. at 2251 n. 21; *Williamson,* 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13; *Hodel,* 452 U.S. at 297, 101 S.Ct. at 2371; *Federal Deposit Ins. Corp.,* 921 F.2d at 615.

■ The date on which a taking or deprivation of property must be measured is the date on which governmental action " 'immediately and drastically diminishes the value of the [property owner's] interest.' " *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983) (citing *Mullane v. Central Hanover B. & T. Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). A statutory special tax lien, although unenforceable pending appellate review, may represent such a scenario. *See Mennonite,* 462 U.S. at 798, 103 S.Ct. at 2711.

■ In the present case, there is no record evidence, however, that the City's lien rendered Sisters's property wholly useless or caused a diminution in economic value. In its conclusions of law, the trial court did not find that invalidation of the assessment and lien, unaccompanied by payment of damages, would not compensate Sisters for the economic loss suffered as a result of the lien's interference with Sisters's property. The trial court did not determine what injury, if any, was caused by the lien's interference with the property's title. Sisters did not seek compensation for the lien's interference beginning with the date the lien attached and ending on the date the lien became void and unenforceable. *See San Diego Gas & Elec. v. City of San Diego,* 450 U.S. 621, 657–58, 101 S.Ct. 1287, 1307, 67 L.Ed.2d 551 (1981) (Brennan, J., dissenting). Rather, Sisters sought only attorney's fees as a prevailing party in a section 1983 cause of action.

Sisters utilized the article 1105b process and prevailed. The City has not collected any tax revenue assessed against Sisters's property. The record does not establish that the lien's interference with the property's title immediately and drastically diminished the property's value, rendered the property wholly useless, or caused a diminution in economic value. *See Mennonite,* 462 U.S. at 798, 103 S.Ct. at 2711. Consequently, Sisters did not meet its burden to show an unconstitutional taking or a deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments. We, therefore, conclude that the trial court erred in finding a constitutional injury compensable under section 1983. We sustain the City's eighth and tenth points of error.

In points of error seven and eleven, the City contends that the trial court erred in finding federal constitutional violations because substantial evidence exists to support the assessment. We have already determined that the record does not contain substantial evidence to reasonably sustain the City Council's finding that the street improvements would enhance the value of Sisters's property in a sum equal to the amount assessed. Accordingly, we overrule the City's seventh and eleventh points of error.

## ATTORNEY'S FEES

In its twelfth point of error, the City complains that the trial court erred in awarding Sisters its attorney's fees. The City argues that Sisters is not entitled to recover attorney's fees under state law or under section 1988.

■ Under Texas law, attorney's fees are not recoverable unless authorized by statute or by contract. *See New Amsterdam Casualty Co. v. Texas Indus. Inc.,* 414 S.W.2d 914, 915 (Tex.1967). Attorney's fees are not recoverable under article 1105b, the statute that provided Sisters with the hear-

ing and right to appeal. *See* TEX.REV.CIV. STAT.ANN. art. 1105b (Vernon Supp.1993).

Under section 1988, attorney's fees are available to a prevailing party in a section 1983 cause of action. *See Byrd,* 713 S.W.2d at 229. We have already determined, however, that the City's imposition of an assessment lien on Sisters's property did not constitute a taking of private property without just compensation or a deprivation of property without due process of law in violation of the United States Constitution. U.S. CONST. amends. V, XIV.

Because no federal constitutional violations occurred, there is no basis for the trial court's award of attorney's fees under section 1988(b). Accordingly, the trial court abused its discretion in awarding Sisters attorney's fees. We sustain the City's twelfth point of error.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In its thirteenth point of error, the City claims that there is no evidence or insufficient evidence to support a majority of the trial court's findings of fact and conclusions of law. The City does not brief its thirteenth point of error separately. Instead, the City asserts that its contentions are sufficiently addressed in its other twelve points of error. In view of our disposition of the City's first twelve points of error, we need not address the City's thirteenth point of error. *See* TEX.R.APP.P. 90(a).

Accordingly, we reverse the trial court's award of attorney's fees and render that Sisters take nothing on its claim for attorney's fees. We affirm the trial court's judgment in all other respects.